**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

**Case # 10-3641**

Amon, J (CBA), Bloom, M.J. (LB)

NIRVA SANCHEZ
GERARDO SANCHEZ

**Plaintiffs demand trial by jury**

Plaintiffs

**AMENDED AND VERIFIED
CLASS ACTION COMPLAINT**

Vs.

AZZAM ABDERRAHMAN, Personally
AZZAM JOHN/JANE DOES 1-20
TARA ANGLIN MAROLLA, Personally
WESTCHESTER COURT SERVICE-FOX ADVERTISING, INC.

SMITH, BUSS AND JACOBS, LLP
JOHN J. MALLEY, Personally
KENNETH R. JACOBS, Personally
YONKERS LAW FIRM JOHN/JANE DOES 1-20

RACHEL HAQUE, Personally
JOHN G. ANGELET, Personally
ROY R. SPELLS, Personally
MARIA FLORES, Personally
KIMBERLY WALENTIN, Personally
RODNEY MCLEAN, Personally
ALBERT WEISS, Personally
HERMAN FRUEND, Personally
PERCY GOLDMAN, Personally

THE FOUNDRY CONDOMINIUM ASSOCIATION
THE BOARD OF MANAGERS AS AGENT FOR
        THE FOUNDRY CONDOMINIUM ASSOCIATION
BOARD JOHN/JANE DOES 1-20

Defendants

-----------------------------------------------------------X

RECEIVED
OCT 1 2 2010
PRO SE OFFICE

1

## VERIFIED AMENDED COMPLAINT

1) Plaintiffs Nirva Sanchez and Gerardo Sanchez, on behalf of themselves and all others similarly situated, for their amended complaint (original complaint filed on August 9, 2010), allege, upon personal knowledge as to themselves and information and belief as to other matters, as follows:

## INTRODUCTION

2) This class action seeks to vindicate the rights of many New York State residents who have been victimized for years by a scheme to deprive them of due process and fraudulently obtain default judgments worth millions of dollars in violation of the Fair Debt Collection Practices Act, 15 USC § 1692, *et seq*. ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 USC §§ 1961-1968 ("RICO"), the 1866 Civil Rights Act 18 USC § 1983 and 242, the general aiding and abetting section of title 18 USC § 2 (b), violation of 18 USC 1341, 1343, New York General Business Law § 349, and New York Judiciary Law § 487.

3) This is an action for damages and other equitable relief involving sums in excess of One Hundred Thousand ($100,000.00) Dollars, exclusive of interest, costs and legal fees.

4) The primary players in this fraudulent enterprise are 1- a law firm, Smith, Buss & Jacobs, LLP, and its principals (the "Yonkers' Law Firm Defendants"); 2- a notary public Tara Anglin Marolla ("TARA"); 3-a process server Azzam Abderrahman ("AZZAM"); 4- a Condominium Board ("Board"), and *alter ego*

members and officers (the "Board-Members"); 5-A process serving agency ("Fox Advertising").

5) For the past five years, the "Yonkers' Law Firm Defendants" have filed hundreds if not thousands of "consumer credit actions," or debt collection lawsuits in the State of New York Court System. Many of these lawsuits result in default judgments because the defendants being sued "do not appear in court."

6) On information and belief, in nearly all their lawsuits, Defendants engaged in "sewer service."[1] The Yonkers' Law Firm Defendants regularly hires notaries like notary Tara, servers like Azzam, and process service agencies like Fox Advertising, to perform this task. Defendants' practices of sewer service deprives Plaintiffs and putative class members of due process; without proper notice of the lawsuit filed against them, Plaintiffs and putative class members are denied their day in court. On information and belief, sewer service is the primary reason few of the people sued by Defendants appear in court to defend themselves.

7) In order to secure default judgments, the Yonkers' Law Firm Defendants file false affidavits of service claiming that people were served when they were not. Relying on these false affidavits, the Courts issue default judgments.

8) In order to secure default judgments, the Foundry, the Board and the Board Defendants (collectively, the "Foundry Group") caused the Yonkers' Law Firm

---

[1] It is so named on the theory that the server did not deliver the papers, tossed them into the sewer, and then claim that they were served. In South Florida it is known by the name "canal service," and in Illinois, by "lake service."

3

Defendants, Fox Advertising, Tara, and Azzam to file false affidavits of service claiming that Plaintiffs were served when they were not.

9) Plaintiffs seek to end these abhorrent practices once and for all. Plaintiffs and putative class members are entitled to preliminary and permanent injunctive relief, including disgorgement, declaratory relief, and damages.

## **JURISDICTION**

10) The jurisdiction of the Court is invoked pursuant to, *inter alia*, 28 USC. 1331, 15 USC 1692k(d); 28 USC 1964 of the Racketeer Influenced and Corrupt Organization Act ("RICO"); 42 USC § 1983 with 18 USC § 242 Civil Rights; 18 USC § 1961-68, and supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367, and principles of pendent jurisdiction. Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

## **VENUE**

11) Venue of this action is based upon some Defendants' addresses and place of business; and upon 28 USC. § 1391 and 18 USC § 1965.

## **PARTIES**

### ***Plaintiffs***

12) At all material times mentioned herein Plaintiff Nirva Sanchez ("Nirva") is a 70-year-old citizen of the United States and a resident of the state of New York. Mrs. Sanchez is a "consumer" as that term is defined in 15 USC § 1692.

4

13) At all material times mentioned herein Plaintiff Gerardo Sanchez ("Gerardo") is a 69-year-old citizen of the United States and a resident of the state of New York. Gerardo is a "consumer" as that term is defined in 15 USC § 1692.

## *Defendants*

### *Collectively as "Defendants-Lawyers"*

14) Defendant Smith, Buss & Jacobs, LLP (the "Yonkers' Law Firm") is a limited liability company and partnership with its principal place of business at 733 Yonkers Avenue, Yonkers, New York 10704. Defendant is a law-firm and is regularly engaged in the business of collecting debts alleged to be due to another, via the mail, telephone, internet, and civil debt collection lawsuits, on behalf of its clients and co-conspirators, including but not limited to Defendants "Foundry Group" Defendant is a "debt collector" as defined by the FDCPA, 15 USC § 1692.

15) Defendant John J. Malley ("Malley") is a natural person, and a partner in Defendant Yonkers' Law Firm. Defendant Malley regularly collects, directly or indirectly, consumer debts alleged to be due to another, via the mail, telephone, internet, and civil debt collection lawsuits.

16) Defendant Malley is a "debt collector" as defined by the FDCPA, 15 USC § 1692. Upon information and belief Malley was and is the *alter ego* of Defendant Yonkers' Law Firm. He is also the driving force in the acts committed in the conspiracy.

17) Defendant Kenneth Jacobs ("Jacobs") is a natural person, and a partner in Defendant Yonkers' Law Firm. Defendant Jacobs regularly collects, directly

or indirectly, consumer debts alleged to be due to another, via the mail, telephone, internet, and civil debt collection lawsuits.

18) Defendant Jacobs is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  Upon information and belief Jacobs was and is the *alter ego* of Defendant Yonkers' Law Firm.  He is also the driving force in the acts committed in the conspiracy.

19) Defendants Yonkers' Law Firm John/Jane Does 1-20 ("Lawyers-John/Jane") are persons associated with Defendant Yonkers' Law Firm who were involved in the violations of law alleged in this verified Complaint.

*Defendants: Foundry and Foundry Board ("Foundry Group")*

20) Upon information and belief, at all material times mentioned herein, the Board of Managers ("Board") is the agent of The Foundry at Washington Park Condominium ("Foundry").  The Board and the Foundry have their principal place of business located at c/o John J. Lease Management Co., Inc., 5020 Route 9W, Newburgh, New York 12550.

21) Upon information and belief, the Board has complete control over Foundry's debt collection activities.  Defendants Board and Foundry are "debt collectors" as defined by the FDCPA, 15 USC § 1692.  Upon information and belief Board was and is the *alter ego* of Defendant Foundry.  They are also the driving force in the acts committed in the conspiracy.

22) Upon information and belief Foundry is a condominium association that have their principal place of business located at c/o John J. Lease Management Co., Inc., 5020 Route 9W, Newburgh, New York 12550.  Defendant Foundry also has control over Foundry's debt collection activities.  Defendants Foundry, like the Board, are "debt collectors" as defined by the FDCPA, 15 USC § 1692.

*Defendants-Board Members*

23) Defendant Rachel Haque ("Haque") is a natural person.  Defendant Haque is a member and President of the Board.  In her capacity as President of the Board she is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; she is engaged in debt collection.  Defendant Haque is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  She resides at 306 Old Farm Road, Valhalla, New York, 10595-1507.  Upon information and belief Haque was and is the *alter ego* of the Board and the Foundry.  She is also the driving force in the acts committed in the conspiracy.  Defendant Haque prepared and filed a notarized notice of unpaid charges dated April 23, 2010 (**Exhibit A**).  Defendant Haque authorized and directed collection proceedings against Plaintiffs (**Exhibit B**, dated March 10, 2010).

24) Defendant John G. Angelet ("Angelet") is a natural person.  Defendant Angelet is a member and the Treasurer of the Board.  In his capacity as Treasurer of the Board he is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; he is engaged in debt collection.  Defendant Angelet is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  He resides in Brooklyn and in Manhattan. Upon information and belief Angelet was and is the *alter ego* of the Board and the Foundry.  He is also the driving force in the acts committed in the conspiracy.  Defendant Angelet prepared and filed a notarized notice of unpaid charges dated March 22, 2010 (**Exhibit A**).

Defendant Angelet authorized and directed collection proceedings against Plaintiffs (**Exhibit B**, dated <u>March 10, 2010</u>).

25) Defendant Maria S. Flores ("Flores") is a natural person.  Defendant Flores is a member and the Secretary of the Board.  In her capacity as Secretary of the Board she is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; she is engaged in debt collection.  Defendant Flores is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  She resides at 44 Johnes St., Newburgh, New York 12550.  Upon information and belief Flores was and is the *alter ego* of the Board and the Foundry.  She is also the driving force in the acts committed in the conspiracy.  Defendant Flores prepared and filed a notarized notice of unpaid charges dated <u>March 25, 2010</u> (**Exhibit A**).  Defendant Flores authorized and directed collection proceedings against Plaintiffs (**Exhibit B**, dated <u>March 10, 2010</u>).

26) Defendant Roy R. Spells ("Spells") is a natural person.  Defendant Spells is a member and the Vice-President of the Board.  In his capacity as Vice-President of the Board he is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; he is engaged in debt collection.  Defendant Spells is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  He resides at 70 Johnes St., Newburgh, New York 12550.  Upon information and belief Spells was and is the *alter ego* of the Board and the Foundry.  He is also the driving force in the acts committed in the conspiracy. Defendant Spells

prepared and filed a notarized notice of unpaid charges dated <u>March 23, 2010</u> and **attested his own signature (<u>Exhibit A</u>)**.  Defendant Spells authorized and directed collection proceedings against Plaintiffs (**<u>Exhibit B</u>**, dated <u>March 10, 2010</u>).

27) Defendant Kimberly Walentin ("Kimberly") is a natural person.  Defendant Kimberly was a member of the Board (although not a unit owner, in violation of the Condo By-Laws).  In her illegal capacity as member of the Board she was regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; she is engaged in debt collection.  Defendant Kimberly is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  She resides at 70 Johnes St., Newburgh, New York, 12550.  Upon information and belief Kimberly was and is the *alter ego* of the Board and the Foundry.  She is also the driving force in the acts committed in the conspiracy.  Defendant Kimberly prepared and filed a notarized notice of unpaid charges dated March 25, 2010 (**<u>Exhibit A</u>**).  Defendant Kimberly authorized and directed collection proceedings against Plaintiffs (**<u>Exhibit B</u>**, dated <u>March 10, 2010</u>).

28) Defendant Rodney McLean ("McLean") is a natural person.  Defendant McLean is a member of the Board.  In his capacity as member of the Board he is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; he is engaged in debt collection.  Defendant McLean is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  He resides at 70

Johnes St., Newburgh, New York. Upon information and belief McLean was

and is the *alter ego* of the Board and the Foundry. He is also the driving force

in the acts committed in the conspiracy. Defendant McLean prepared and filed

a notarized notice of unpaid charges dated <u>Marc 22, 2010</u> (**Exhibit A**).

Defendant McLean authorized and directed collection proceedings against

Plaintiffs (**Exhibit B**, dated <u>March 10, 2010</u>).

29) Defendant Albert Weiss ("Albert") is a natural person. Defendant Albert is a

member of the Board. In his capacity as member of the Board he is regularly

engaged in the business of collecting, directly or indirectly, debts alleged to be

due to another, via mail, telephone, internet, and civil debt collection lawsuits;

he is engaged in debt collection. Defendant Albert is a "debt collector" as

defined by the FDCPA, 15 USC § 1692. He resides in Monroe, New York.

Upon information and belief Albert was and is the *alter ego* of the Board and

the Foundry. He is also the driving force in the acts committed in the

conspiracy. Defendant Albert authorized, financed, and directed collection

proceedings against Plaintiffs (**Exhibit B**, dated <u>March 10, 2010</u>).

30) Defendant Herman Freund ("Freund") is a natural person. Defendant Freund is

a member of the Board. In his capacity as member of the Board he is regularly

engaged in the business of collecting, directly or indirectly, debts alleged to be

due to another, via mail, telephone, internet, and civil debt collection lawsuits;

he is engaged in debt collection. Defendant Freund is a "debt collector" as

defined by the FDCPA, 15 USC § 1692. He resides in Monroe, New York.

Upon information and belief Freund was and is the *alter ego* of the Board and

the Foundry.  He is also the driving force in the acts committed in the conspiracy.  Defendant Freund authorized and directed collection proceedings against Plaintiffs (**Exhibit B**, dated <u>March 10, 2010</u>).

31) Defendant Percy Goldman ("Percy") is a natural person.  Defendant Percy is a member of the Board.  In his capacity as member of the Board he is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits; he is engaged in debt collection.  Defendant Percy is a "debt collector" as defined by the FDCPA, 15 USC § 1692.  He resides in Monroe, New York.  Upon information and belief Percy was and is the *alter ego* of the Board and the Foundry.  He is also the driving force in the acts committed in the conspiracy.  Defendant Percy authorized and directed collection proceedings against Plaintiffs (**Exhibit B**, dated <u>March 10, 2010</u>).

32) Defendants "Board John/Jane Does 1-20" are persons associated with the Board defendants who were involved in the violations of law alleged in this Complaint.

_Defendants: "Servers" (Azzam; Azzam John/Jane Does; Tara; Fox Advertising)_

33) Defendant Azzam N. Abderrahman ("AZZAM") is a natural person who works as a process server.  Defendant AZZAM's address is: 1370 66th St., Brooklyn, New York 11219.  He is regularly engaged in the business of collecting debts by assisting the other defendants to file and maintain civil debt collection lawsuits and to obtain default judgments in some cases, by utilizing the mail, telephone and internet.  Defendant AZZAM regularly collects, directly or indirectly, consumer and other debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits.  Defendant AZZAM is a "debt collector" as defined by the FDCPA, 15 USC § 1692.

34) He is famous for his nickname: The Cemetery Server.

35) See an April 5, 2010 _Brooklyn Eagle_ article highlighting a one hard-to-believe incident with **AZZAM** at Green-Wood Cemetery in Brooklyn:

He served a Mr. Taylor by substitute service on his wife 'Mary Doe', although he has never been married.
**AZZAM** swore that he knocked on Mr. Taylor's apartment door a total of seven times without finding him.  He also alleged to have spoken with neighbors {'Jane' Vargas, 'Mr. Young'} or co-tenants {wife **'Mary Doe'**} to determine that Mr. Taylor lived there and was not in the military.
Unbeknownst to this liar [**and perjurer**] is that the apartment is within a gothic mansion surrounded by an wrought iron fence located within the 450-acres Greenwood Cemetery.  But for a moat, the building is as secure as a castle.  You cannot enter it without ringing a bell at the gate and being admitted by the cemetery keeper, Mr. Taylor's father.  **As for the neighbors, there are none other than the dead.**[2]

---

[2]AZZAM brings notoriety to the process serving industry, casting a negative image upon the legal profession.

36) Defendants "Azzam John/Jane Does 1-20" are persons associated with AZZAM who were involved in the violations of law alleged in this Amended Complaint.

37) Defendant Tara Anglin Marolla ("TARA") s a natural person who lives in Staten Island, New York. She notarized Azzam's false affidavits of service. She is regularly engaged in the business of collecting debts by assisting the other defendants to file and maintain civil debt collection lawsuits, by notarizing their affidavits, and by utilizing the mail, telephone and internet. Defendant TARA regularly collects, directly or indirectly, consumer and other debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits.  Defendant TARA is a "debt collector" as defined by the FDCPA, 15 USC § 1692.

38) Defendant Westchester Court Service-Fox Advertising, Inc.  ("Fox Advertising") is regularly engaged in the business of collecting debts by assisting the other defendants to file and maintain civil debt collection lawsuits, by notarizing their affidavits, and by utilizing the mail, telephone and internet. Defendant Fox Advertising regularly collects, directly or indirectly, consumer and other debts alleged to be due to another, via mail, telephone, internet, and civil debt collection lawsuits.  Defendant Fox Advertising is a "debt collector" as defined by the FDCPA, 15 USC § 1692.

## FACTS

### Background Facts

39) New York City and New York State in general are epicenters for debt collection lawsuits.  Debt collectors have been filing nearly 300,000 lawsuits per year in New York City alone.

40) Because of the high rate of defaults by defendants in debt collection lawsuits, however, plaintiffs are rarely put to their proof of claim.  Defendants appear to defend themselves in only about 10% of the cases and plaintiffs obtain default judgments in the majority of lawsuits that they bring.  Upon information and belief, sewer service is the primary reason so few defendants appear in court.

### Sewer Service

41) The term "sewer service" is widely used to describe the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit of service.  Sewer service deprives people of due process because they do not get notice of the lawsuits and are denied their day in court.  Default judgments are then entered on the basis of defendants' failure to appear.  As the affidavit of service often appears facially valid (*indeed, its very purpose is to pass facial review*), the fraud generally goes undetected unless the defendant discovers and challenges the fraudulent affidavit, before or after a default is entered.

42) Sewer service has a long history in New York City.  During the late 1960s and early 1970s, the Civil Court was inundated with tainted consumer claims, many of which were reduced to judgment when the defendant defaulted as a result of

sewer service.  When the courts learned of the widespread fraud, it employed

its general police powers to vacate thousands of default judgments.

*Joint Report*

43) Sewer service remained "rampant" in the 1980's, according to a 1986 report

issued by the Office of the New York State Attorney General and the New

York City Department of Consumer Affairs (the "Joint Report").  The Joint

Report concluded that 39% of all service in New York City was sewer service,

and that a "staggering number of illegal default judgments (48,649, or one third

of all default judgments) are entered annually."

44) The Joint Report further concluded that low pay for process servers was the

primary cause of sewer service.  At the time, debt collection attorneys paid $6

to $12 to process serving agencies per service of process in a debt collection

lawsuit.  The agencies, in turn, generally paid only $3 to the individual process

server who was assigned the task of serving the defendant.  Moreover, the

process server was paid only for completed services, not for unsuccessful

attempts.

45) The Joint Report detailed the experience of an investigator of the New York

City Department of Consumer Affairs who worked for one month as a licensed

process server in order to determine whether a process server could attempt to

effect proper service and still make a living at the prevailing pay scales.

During that month, the investigator was given over 400 papers to serve and

was paid $3 per completed service.

46) According to the Joint Report, the investigator was unable to serve almost one-half of the papers because the defendants no longer lived at the addresses provided for service.  After making 537 attempts, the investigator was able to serve only 217 complaints, resulting in earnings of about $600 before deductions for taxes and expenses (such as gas).  Thus, the investigator made less than half of the minimum wage.

47) The Joint Report concluded that process serving agencies, by underbidding the true cost of proper service, effectively sold sewer service.

48) Finally, the Joint Report included a comprehensive review of the logs of 37 randomly selected process servers.  The Joint Report found that 95% of the process servers reported duplicate of "superman" services.  That is they claimed to have served process at two or more different places at the same time…a physical impossibility.

*The Court of Appeals*

49) In 1987, the New York Court of Appeals noted "a continuing and pervasive problem of unscrupulous service practices by licensed process servers."  <u>Barr v. Dep't of Consumer Affairs</u>, 70 N.Y.2d 821, 822-23 (1987).  The Court explained:

**"These practices deprive defendants of their day in court and lead to fraudulent default judgments."**

50) Sewer service in debt collection cases remains rampant to this day.

*Justice Disserved Report and DCA Hearing*

51) In June 2008, MFY Legal Services ("MFY") issued a report, *Justice Disserved*, documenting highly questionable process serving practices.

17

52) On June 13, 2008, the New York City Department of Consumer Affairs held a public haring on process servers in New York City ("DCA hearing"). Testimony at the hearing revealed that: (a) process serving agencies usually charge between $15 and $45 for service of a summons and complaint; (b) the companies retain most of the fees to pay for overhead; (c) individual process servers were paid between 3 and $6 per completed service.

53) Process servers in debt collection lawsuits today are thus paid basically the same wages as they were *23 years ago*. In 1986, subway fare was $1 and a gallon of gas cost 93 cents. Since 1986 the cost of living has increased substantially and the minimum wage has more than doubled, yet process server wages have remained stagnant at a rate that was insufficient to cover the cost of proper service even then.

54) At the DCA hearing, every process server that testified said debt collection attorneys will not pay for service attempts that are not completed.  In other words, a process server who visits the last known address of a debtor and learns that the debtor has moved or died will only be paid if he perjures himself.  The Vice President of the New York State Professional Process Servers Association questioned the ethics of debt collectors paying only for completed service and will not accept contracts with such a condition.

55) On information and belief the Yonkers' Law Firm will pay defendant Azzam and other process servers individuals and other process serving agencies only for completed service, thereby knowingly promoting the use of false affidavits of service.

56) Moreover, at the DCA hearing, executives from three different process serving agencies testified that they refused to accept work from consumer debt collection attorneys because they could not make a profit based on the low fees the collection attorneys demand unless their process servers engaged in sewer service. For those who testified, this meant that they cannot do business with operations like those run by the "Defendants-Lawyers." Others, however, like Azzam and his associates at different serving agencies, are less scrupulous and thus willing to join and further a fraudulent enterprise.

*The New York State Attorney General*

57) The Office (in a repeat of a 1968 United States Attorney's Office for the Southern District of New York investigation), shed additional light on this problem (spurred by the above mentioned reports and calls for action by different groups) when it filed criminal fraud charges against a process service company[3] and when it sued 35 law-firms.

58) After a DCA hearing, AG audited the process server logs of a single process serving agency called American Legal Process ("ALP").

59) The Attorney General found that: (a) ALP was paid $30-$35 by the debt collection law firms per service of a summons and complaint in a consumer matter; and (b) ALP in turn paid its process servers as little as $3 per service and no more than $7 per service, for an average of $5.

60) The AG reviewed process server logs for internal inconsistencies and found countless examples of sewer service. For example, one process server claimed

---

[3] *See* Press Release, Office of Attorney General: *Cuomo Announces Guilty Plea of Process Server Company Owner*, January 15, 2010.

to have made 69 service attempts in a single day in two different New York counties that were 400 miles apart—at 8:19 a.m., he claimed to have attempted service on a defendant in Brooklyn, and one minute later, at 8:20 a.m., on another defendant in Western New York.  The Attorney General found that the process server would have had to drive more than 10,000 miles that day to make all his purported service attempts, and further found that such physically impossible movements were documented repeatedly throughout the service logs of ALP's 20 busiest process servers.

61) The AG also uncovered significant notary fraud on the part of ALP's owner. In July 2009, the Attorney General and Chief Administrative Judge of the New York Courts sued American Legal Process and 37 debt collection law firms and debt collectors, seeking to overturn 100,000 default judgments that had been entered as a result of sewer service by ALP's process servers.

*62)* On information and belief, the practices exposed by the Attorney General are not unique to ALP, but are standard practice throughout the debt collection and process serving industries.

*Breakdown of the system*

63) The breakdown of the system as it exists now in 2010 (In theory, to protect defendants, but serving, in practice, to victimize them), is a repetition of the practices of the 2008s and 2009s.

*The NYC Bar Association's Report*

64) The New York City Bar Association's Report (Committee on New York City

Civil Court, Committee on Consumer Affairs: *Out of Service, A Call to Fix the*

*Broken Process Service Industry* (April 2010), revealed:

**"There is a crisis in the process service industry in New York City.
In 2009, 66% of the 241,195 consumer cases initiated resulted in default
judgments, [In 2008 nearly 300,000, and 79% resulted in default
judgments] often after sewer service (Sewer service is the practice of not
notifying people that they have been sued.  The 'service' of service is so
improper that the process server may just as well have thrown the papers
down the sewer).  As a result each year tens of thousands of New York City
residents are deprived of their due process right…Hearings held in 2008 by
the New York City Department of Consumer Affairs and well publicized
actions in 2009 by the New York State Attorney General, including a
proceeding to overturn 100,000 default judgments due to questionable
service, highlight the persistent nature of the process service in New York."**

21

**The Judiciary Role**

65) In their summary of--some--of their recommendations the New York City Bar
Association included (at page 3): "A more active role by <u>the judiciary in
ensuring that process servers abide by the law</u>, including creation of a standing
task force on process service by the Court system and DCA." [Emphasis
added]. The Bar Association complained that "…**judges** place a low priority
on a defendant's right to be properly served. Notice of a lawsuit is a basic due
process right which should be championed by the **courts**."[4] [Emphasis added].

---

[4] "Practitioners…report that **judges** often dissuade defendants from asserting their right to
challenge service and instead, pressure defendants to settle their cases. In fact, as reported by
consumer advocates across the city, many **judges** appear to routinely require defendants to waive
the defense of personal jurisdiction as a prerequisite to vacate a default judgment based on
improper service. Further, very few traverse hearings are held in the five boroughs ("Justice
Disserved"), providing little deterrence to process servers who flout the law."

"…lax enforcement, and cavalier disregard of process service requirements by attorneys…and by
many **judges** result in wholesale violations of the due process rights of tens of thousands of New
Yorkers annually." (At page 23).

"DCA and the Office of Court Administration (OCA) should commence a joint campaign to
encourage the **judiciary** to report traverse hearing outcomes. **Judges** should be urged to bring
DCA's attention the results of traverse hearings and any irregularities in process service. OCA
and DCA should make the process as user-friendly for **judges** as possible, including, for example,
the use of an online reporting mechanism." (At page 27).

"The **courts** have a key role to play in ensuring that process servers uphold their duty to follow
the law and should not tolerate sewer service. Service of process is the first step in a **judicial**
proceeding. Consistent with fundamental notions of due process and fairness, a person must
receive proper notice of any **judicial** action in which she is made a party. The **court** system
should demonstrate a renewed commitment to combating sewer service by creating a taskforce to
monitor service of process and propose solutions."

"Unfortunately and understandably, there are pressures…that may lead **judges** to be less attentive
to unlawful service than they might otherwise be. Nonetheless, it is essential that the **courts** as an
institution be seen as vigilant in insisting that the process service industry adhere to proper legal
standards." (At page 30).

"However, the fact remains that the laws governing service of process are often honored in the
breach. We believe that the **court** system must explore further initiatives to ensure that process
servers adhere to the highest possible standards." (At page 31). [Emphasis added].

66) Debt collection law firms plainly benefit from sewer service.  By not serving the defendants, debt collection firms like the Yonkers' Law Firm are able to generate hundreds of judgments by default on cases where they could never prevail on the merits because they do not have evidence to make out a prima facie case.  Once default judgments are fraudulently obtained, they are used to restrain people's bank accounts, garnish their wages, seize their properties, damage their credit reports, and/or pressure them into unaffordable payment plans.

67) Proceeds from the illegal scheme are then used to commence new actions without the ability to prove that a debt is owed, using sewer service, which is followed by the filing of new perjurious affidavits of service, thus securing new default judgments.  And, the cycle continues.

**Court Procedures**

68) In New York a plaintiff must serve the defendant with the summons and complaint in a manner authorized by CPLR 308. This can be done by: (1) "delivering the summons within the state to the person to be served," CPLR 308(1) ("Personal Service"); or (2) "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailing the summons and complaint to the person's last known residence or actual place of business, CPLR 308(2) ("Substitute Service").

69) A plaintiff must exercise due diligence to serve the defendant by personal or substitute service. CPLR 308(4). Courts have interpreted due diligence to mean three attempts on different days at different times of the day. When personal or substitute service "cannot be made with due diligence," a plaintiff may effect service by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode" of the person and mailing the summons and complaint to the person's last known residence or actual place of business, CPLR 308(4) ("conspicuous place service" or "nail and mail service").

70) When a defendant fails to appear in the action, the plaintiff may seek a default judgment. CPLR 3215(a).

71) In order to obtain a default judgment, the plaintiff must submit (a) proof of service, in the form of an affidavit by the process server, and (b) proof of "the

claim, the default, and the amount due by affidavit made by the party." CPLR 3215(f).

72) In debt collection actions, the plaintiff also must submit an affidavit that additional notice has been given to the defendant at least twenty days prior to the plaintiff's application for a default judgment.  This additional notice consists of mailing a copy of the summons to the defendant at (in order of preference) the defendant's residence, place of employment, or last known residence.  The additional notice may be mailed simultaneously with service of the summons upon the defendant.  CPLR 3215(g)(3).

73) In addition, section 130-1.1-a of the Rules of the Chief Judge of New York requires every pleading, written motion and other paper served or filed with the court t be signed by an attorney.  When an attorney signs a paper, he or she "certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper or the contentions therein are not frivolous…and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct…".  22 NYCRR § 130-1.1-a(b).

**Defendants' Facts**

74) Defendants routinely use the Courts to collect debts.

75) On information and belief, when the Yonkers' Law Firm files debt collection lawsuits, they frequently hire Defendant FOX ADVERTISING, AZZAM, TARA, and/or Defendant Azzam John/Jane Does 1-20 (collectively "Servers") to "serve process," or, more accurately stated, to provide an affidavit of service that Defendants know is highly likely to be false. On information and belief, Defendant Yonkers' Law Firm will pay Servers, for completed service, but will make no payment for unsuccessful attempts.

76) On information and belief, Defendants Servers frequently engaged in sewer service. When this happens, Plaintiffs and putative class members are deprived of due process because they do not receive notice of the lawsuit and therefore do not appear to defend themselves.

77) In order to obtain default judgments, Defendants file fraudulent affidavits of service with the courts. In these affidavits, Defendants, Servers, claim to have served defendants with legal process when they have not, in fact, done so.

78) On information and belief, the "Defendants-Lawyers" [Yonker's Law Firm, Malley, Jacobs, and Lawyers-John/Jane], Defendant-Board, Foundry, Foundry Group, and Defendants-Board Members (Collectively "SUPERVISING DEFENDANTS"), all know or reasonably should know that most of the affidavits of service are false and invalid.

79) On information and belief, although Defendants file complaints and/or secure judgments in hundreds of lawsuits, service of process in the majority of those lawsuits is allegedly done by only a handful of individual process servers.

80) One of these individual process servers is Defendant AZZAM, whose license is in question and whose process serving practices are the subject of further investigation by the New York City Department of Consumer Affairs.

81) On information and belief, the SUPERVISING DEFENDANTS authorize and/or have knowledge of the deceptive and misleading nature of Defendant AZZAM's affidavits, and that the affidavits are purposely drafted in a manner to give the court the impression that they have met statutory requirements.

82) Plaintiffs and members of the putative class are substantially harmed when Defendants use those affidavits to try to obtain default judgments.

27

**Individual Plaintiff Facts**

***Gerardo Sanchez***

83) Plaintiff Gerardo Sanchez ("Gerardo") is 69 years old citizen of the United States and a resident of the state of New York, with his wife.

84) On or about April 27, 2010 SUPERVISING DEFENDANTS, after preparing notices of unpaid charges, commenced a lawsuit against Gerardo Sanchez in Orange County Supreme Court.  Defendant Board and Foundry are the plaintiffs in the suit (Index #4484-10).

85) The suit alleges that Gerardo owes money to the Foundry.

86) Gerardo believes that he does not owe that debt and does not recognize that amount.

87) SUPERVISING DEFENDANTS claimed that AZZAM served the summons and complaint upon Gerardo Sanchez by substitute service (See copy of Affidavit of Service attached hereto as **Exhibit C**).

88) On May 18, 2010, Defendant AZZAM or someone else prepared an affidavit attesting that Gerardo had been served with substitute process on May 4, 2010 in accordance with New York law.  The affidavit was purportedly signed by Defendant AZZAM and notarized by TARA (under the name: Tara M. Anglin) (Notary #01AN-5035821, Richmond County, Expiring **Nov. 14, 2013**).

89) The Affidavit of Service contains numerous false statements.  Specifically:

A- The notary public does not exist in Richmond County: There is no notary public's signature under that name, nor under that license #, registered in

28

the Richmond County Court, as required by Notary Public License Law §

132. (See Affidavit of Santiago Iglesias attached hereto as **Exhibit D**).

B- The affiant's signature is different than the signature of Azzam's in his

license application to the DCA (See **Exhibit E**).[5]

C- The name is not exactly the same.[6]

D- The affiant alleged substituted service on a "*Mr. Sanchez (Relative)*" on

May 4, 2010.

E- The affiant swore that he left the bulky papers (about 2" thick) with a "Mr.

Sanchez (Relative)" at Gerardo's, but no such person resides with him his

wife and his housekeeper. (See Maritza Alvarez and Gerardo's affidavit

attached hereto as **Exhibit F**).

F- The affiant swore that he spoke to "Mr. Sanchez (Relative)" and confirmed

that he was not in the military or dependent on anyone in the military, but

he does not know "Mr. Sanchez (Relative)" so this person would be unable

to confirm his military status.

G- The affiant swore that "Mr. Sanchez (Relative)" was male, brown skin, 36-

50 years old, 5'9"--6'0", 161-200 lbs. (with no other identifying features),

---

[5] The courts must have absolute assurance that these "signed" declarations are indeed that of the person making the statement.
Signing the name of a process server, with or without that person's consent, is a shortcut that is not only improper but illegal as well.  This illegality would be compounded should a person sign on behalf of a process server and that signature is attested to by a notary as a sworn statement of that process server.
If a notarized affidavit is signed by someone other than the actual affiant, it is a crime for the signer and the notary public.  Every process server knows that, or should know that.

[6] Affiant's name in affidavit: Azzam A**D**ERRAHMAN
Affiant's name in signature: Azzam A**B**DERRAHMAN
Name in DAC License Application: Azzam N. ABDE**R**AHMAN

but Gerardo doesn't know anyone who fits that description in the vicinity of his house.

H- The affiant swore that he mailed a copy of the summons and complaint to Gerardo on May 4, 2010, but he never received a copy of the summons and complaint by mail.  (See also Maritza Alvarez and Gerardo Sanchez' affidavits attached hereto as **Exhibit F**).

90) On or about June 23, 2010, SUPERVISING DEFENDANTS caused the fraudulent affidavit of service described above to be prepared and filed with the court.

91) The Affidavit of Service was notarized by TARA (as Tara Anglin) and physically submitted and filed by Fox Advertising on June 23, 2010. (Also, the *Mr. Sanchez-Relative* Affidavit was not filed within the time allowed by the statute, after substitute service).  Upon information and belief, Fox Advertising is not registered with the Department of Consumer Affairs (DCA).  The filing, without the signature of a lawyer and by its nature, was false, fraudulent and part of the overall grand scheme.  Furthermore, according to the Notary License Dept. of the State of New York, TARA ANGLIN does not have a license under that name and number (See **Exhibit G**, Certification letter, dated August 19, 2010, from the Special Deputy Secretary of State, stating that "no record of Tara Anglin being commissioned as a Notary Public").

91a) On May 24, 2010 Gerardo filed a motion to dismiss the complaint due to improper service.  The motion was opposed with an Affirmation (under the penalties of perjury!) by Malley and Defendant Yonkers' Law Firm.  They affirmed, on behalf of

SUPERVISING DEFENDANTS, that the Affidavit of Service was valid, and *prima facie* evidence of service.

92) Since the dismissal, when decided, might be without prejudice, Gerardo is at risk of being sued and subjected to improper service for a second time.  In addition, Gerardo has incurred economic harm because of Defendant's actions.  For example, Gerardo had to spend money copying his file, buy legal books, do legal research, on transportation to and from the courthouse, hire people to assist him, etc..  In addition, Gerardo could not perform any work while fighting the improper service; he is depressed with tremendous anxiety.

***Nirva Sanchez***

92-a) Plaintiff Nirva Sanchez ("Nirva") is a citizen of the United States, is 70 years old and lives in New York with her husband and housekeeper.

93) On or about April 27, 2010 SUPERVISING DEFENDANTS, after preparing notices of unpaid charges, commenced a lawsuit against Nirva in Orange County Supreme Court.  Defendant Board and Foundry are the plaintiffs in the suit (Index #4484-10).

94) The suit alleges that Nirva owes money to the Foundry.

95) Nirva believes that he does not owe that debt and does not recognize that amount.

96) SUPERVISING DEFENDANTS claimed that AZZAM served the summons and complaint upon Nirva by substitute service (See copy of Affidavit of Service attached hereto as **Exhibit H**).

97) On May 18, 2010, Defendant Azzam or someone else prepared an affidavit attesting that Nirva had been served with substitute process on May 4, 2010 in accordance with New York law.  The affidavit was purportedly signed by Defendant AZZAM and notarized by TARA (under the name Tara M. Anglin) (Notary #01AN-5035821, Richmond County, Expiring (now) on **Nov. 14, 2010**).

98) The Affidavit of Service contains numerous false statements.  Specifically:

A- The notary public does not exist in Richmond County: there is no notary public's signature under that name, nor under that license #, registered in the Richmond County Court, as required by Notary Public License Law § 132. The expiration date on the two affidavits (Gerardo's and Nirva's) are

32

not the same.  (See also Affidavit of Santiago Iglesias attached hereto as **Exhibit D**).

B-  The affiant's signature is different than the signature of AZZAM's in his license application to the DCA (See **Exhibit E**).

C-  The name is not the same.[7]

D-  The affiant alleged substitute service on a "*Mr. Sanchez (Relative)*" on May 4, 2010.

E-  The affiant swore that he left the bulky papers (about 2" thick) with a "Mr. Sanchez (Relative)" , but no such person resides with her, her husband and her housekeeper. (See Maritza Alvarez and Gerardo's affidavit attached hereto as **Exhibit F**).

F-  The affiant swore that he spoke to "Mr. Sanchez (Relative)" and confirmed that he was not in the military or dependent on anyone in the military, but she does not know "Mr. Sanchez (Relative)" so this person would be unable to confirm his military status.

G-  The affiant swore that "Mr. Sanchez (Relative)" was male, brown skin, 36-50 years old, 5'9"--6'0", 161-200 lbs. (with no other identifying features), but Nirva doesn't know anyone who fits that description in the vicinity of her house.

H-  The affiant swore that he mailed a copy of the summons and complaint to Nirva on May 4, 2010, but she never received a copy of the summons and

---

[7] Affiant's name in affidavit: Azzam A**D**ERRAHMAN
Affiant's name in signature: Azzam A**B**DERRAHMAN
Name in DAC License Application: Azzam N. ABDE**R**AHMAN

complaint by mail.  (See also Maritza Alvarez and Gerardo Sanchez' affidavit attached hereto as **Exhibit F**).

99)  On or about <u>June 23, 2010</u>, SUPERVISING DEFENDANTS caused the fraudulent affidavit of service described above to be prepared and filed with the court.

100)     The Affidavit of Service was notarized by TARA (as Tara Anglin) and physically submitted and filed by Fox Advertising on <u>June 23, 2010.</u> (Also, the *Mr. Sanchez-Relative* Affidavit was not filed within the time allowed by the statute, after substitute service).

101)     Upon information and belief, Fox Advertising is not registered with the Department of Consumer Affairs (DCA).  The filing, without the signature of a lawyer and by its nature, was false, fraudulent and part of the overall grand scheme.

102)     Furthermore, according to the Notary License Dept. of the State of New York, TARA ANGLIN does not have a license under that name and number (See **Exhibit G**, Certification letter, dated <u>August 19, 2010</u>, from the Special Deputy Secretary of State, stating that "no record of Tara Anglin being commissioned as a Notary Public").

103)  On <u>June 25, 2010</u> Nirva filed a motion to dismiss the complaint due to improper service and lack of jurisdiction.  The motion was opposed (on July 23, 2010) with two Affirmations (under the penalties of perjury!) by Malley and Defendant Yonkers' Law Firm.  They affirmed, on behalf of Defendants

SUPERVISING DEFENDANTS that the Affidavit of Service was valid, and *prima facie* evidence of service.

104) The Affirmations were not signed by Malley, the name that appears on the Affirmations.

105) On the same date (July 23, 2010), Malley and Defendant Yonkers' Law Firm, filed another Affirmation in support of a motion to have the Affidavits of Service as timely filed.  Again, and on behalf of the SUPERVISING DEFENDANTS, they included AZZAM's Affidavit of Service.

106) The Affirmation was not signed by Malley, the name that appears on the Affirmation.

107) On August 10, 2010, attorney Malley, on behalf of SUPERVISING DEFENDANTS, submitted an Affirmation dated July 2, 2010, (in connection with their opposition to the dismissal of the complaint for improper service and lack of jurisdiction), that according to a handwriting expert, it is a simple forgery.  Attorney Malley did not sign the affirmation that bears his name. (See **Exhibit I**).

108) On that same filing (dated August 10, 2010) attorney Malley, on behalf of SUPERVISING DEFENDANTS, submitted to the court an affidavit of Rachel Andrews that was notarized by defendant Kenneth Robert Jacobs (**Exhibit J**).

109) That is not the signature of attorney Jacobs.  According to two handwriting experts (See **Exhibit J**), the so-called signature of attorney Jacobs is not his signature.  It has been part of the law-firm's regular practice to have

35

someone else sign attorneys' names, without regard to whether the statement contained within the papers, were accurate.

110)   The fraudulent signatures offered by Malley are part of the pattern of deceptive practices engaged in by his law-firm.

111)   Attorney Malley and attorney Jacobs have been appraised of the differences in the signatures.  With full knowledge of the falsity of the signatures on the affidavits and on the affirmations, they have made no attempt or offer to correct them.  On the contrary, their actions (by trying to beat us to the punch) demonstrate an intent to deceive the courts and the Plaintiffs.

112)   Material factual statements were falsely presented to the court on various occasions.  The conduct is sanctionable.  The egregious actions should not be ignored.  Kleeman v. Rheingold, (Court of Appeals of New York, 1993) 81 N.Y.2d 270, 598 N.Y.S.2d 149, 614 N.E.2d 712, holds that lawyers have a *non-delegable* duty to exercise care in the service of process, and are liable for their own negligence in selecting a particular process server, particularly with the reputation of AZZAM, a/k/a the "cemetery process server."

113)   Since the dismissal, when decided, might be without prejudice, Nirva is at risk of being sued and subjected to improper service for a second time. In addition, Nirva has incurred economic harm because of Defendant's actions. For example, Nirva had to spend money copying her file, buying legal books, doing legal research, on transportation to and from the courthouse.  In addition, Nirva is depressed with tremendous anxiety.

**Class Action Allegations**

114) Plaintiffs bring this case as a class action under three distinct subdivisions of the Federal Rules of Civil Procedure 23(b).

115) *First*, Plaintiffs seek certification of a Rule 23(b)(1)(A) and/or 23(b)(2) Class consisting of all persons who have been or will be sued by Defendants Yonkers' Law Firm, as counsel for the Foundry and Board Defendants in actions commenced in the New York State Court System, and where improper service (including, but not limited to, the filing of invalid affidavits and affirmations) has been or will be performed.

116) The prosecution of separate actions by individual members of the proposed (b)(1)(A) and (b)(2) class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants.  Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(1)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

117) On information and believe, the Rule (b)(1)(A) and or (b)(2) Class includes many members.  They are so numerous that joinder of all Class members is impracticable.

118) *Second*, plaintiffs seek certification of a Rule 23(b)(3) class consisting of all persons who have been sued by the Defendants Yonkers' Law Firm in actions commenced in the New York State Court System and where improper service (and the filing of invalid affidavits and affirmations) took or will take place.

119) All of the members of the Rule (b)(3) class were injured as a result of defendant's conduct.

120) On information and belief, the Rule (b)(3) class includes thousands of individuals.  They are so numerous that joinder of all Class members is impracticable.  There are numerous questions of law and fact common to the class.  Chief among them are whether Defendants' actions, as described above, violate the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, the New York Consumer Protection Act, the New York Judiciary Law and in particular, the 1866 Civil Rights Act.[8]

121) Defendants' conduct towards Plaintiffs and all absent members of the proposed classes has resulted in fraudulently service of process which has, in turn, caused

---

[8] In June of 1971, the United States Court of Appeals for the Second Circuit, in United States v. Wiseman, et al, 445 F2d 792, cert. denied, 404 U.S. 967 (1971), affirmed the convictions of two process servers for violation of the 1866 Civil Rights Act and the general aiding and abetting section of title 18.
18 USC § 2 (b) provides: Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.  The Second Circuit found that the entry by the Clerk of the Court constituted the necessary state action and therefore action under color of law for the purposes of 18 USC § 242.  Thus, those involved in that process service were found to have violated 18 USC § 2 (b).

The above case, which included an attorney, besides representing a unique application of the Civil Rights Act to deprivation of property.

It also provides an unusual insight into the corrupt operations of the process service business in New York City by law-firms and process servers during the 70's, revealing that for years it had been conducted with substantial indifference to defendants' rights to notice, which is guaranteed by the fourteenth amendment as an essential element of due process.

The Third Circuit has ruled that § 242 of Title 18 with its criminal penalty for denying civil rights under color of law, is to be construed in *pari material* with § 1983. Picking vs. Pennsylvania R. Co., 151 F2d 240, *reh den* 152 F2d 753, overruled on other grounds Bauer vs Heisel, 361 F2d 581, *cert den* 386 US 1021.

serious harm.  The claims and practices alleged in the complaint are common to all members of the class.

122) The violations suffered by the individual plaintiffs are typical of those suffered by the class.  The entire class will benefit from the remedial and monetary relief sought in this action.

123) The individual plaintiffs have no conflict of interest with any putative absent class members, and will fairly and adequately protect the interests of the class.

124) This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members of the class is impracticable, and the damages suffered, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly unlikely that individual actions will be pursued.

125) Managing this case as a class should not present any particular difficulty.

## FIRST CAUSE OF ACTION
(FDCPA, 15 USC § 1692)

126) Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

127) Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair collection practices by many debt collectors" 15 USC § 1692(a).

128) A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 USC § 1692e. Such a prohibition includes the false representation of "the character, amount, or legal status of any debt." 15 USC § 1692e(2)(A). Such a prohibition also includes the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 USC § 1692e(10).

129) A debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 USC § 1692f.

130) Nor may a debt collector "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 USC § 1692d.

131) A process server is exempted from the definition of a debt collector only insofar as the process server is in fact "serving or attempting to serve legal process." 15 USC § 1692a(6)(D).

132) Defendants violated the FDCPA, 15 USC § 1692d, 1692e, 1692e(2)(A), 1692e(10) and 1692f by making false and misleading representations, and engaging in unfair and abusive practices. Defendants' violations include, but are not limited to:

133) Producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not;

134) Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not;

135) As a direct and proximate result of all Defendants' violations of the FDCPA, Plaintiffs have sustained actual damages in an amount to be proved at trial and are also entitled to statutory damages, punitive damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
(Civil RICO, 28 USC § 1962 (c) & (d)

136) Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

137) Plaintiffs are natural persons, and as such are "persons" within the meaning of 18 USC § 1961(3).

138) Defendants are natural persons, corporate, and partnership entities, and as such are "persons" within the meaning of 18 USC § 1961(3).

139) On information and belief, the SUPERVISING DEFENDANTS, which includes the Yonkers Law Firm Defendants, and the Servers, comprise three distinct groups of persons that together form an "enterprise" within the meaning of 18 USC § 1961(4). Each and every Board Defendant that supported the filing of a lien and supported the lawsuit is associated with the enterprise; each and every Defendants-Lawyers is employed by or associated with the above named Board Defendants; each and every Servers Defendants is employed by or associated with the enterprise.

140) On information and belief, the individuals and entities that constitute the Board Defendants/Foundry Group, Defendants-Lawyers, and the Servers Defendants taken together are an association-in-fact within the meaning of 18 USC § 1961(4).

141) The purpose of the association-in-fact-enterprise and/or enterprises (collectively "Enterprise") is to try to secure default judgments through fraudulent means and to use those judgments to extract money from Plaintiffs and putative class members. This is accomplished by the Board Defendants initiating false collection debts; the Defendants-Lawyers commencing actions in court (and blocking the production of records with invalid affidavits and invalid affirmations) on behalf of them and/or others;

42

the Defendants-Lawyers trying to obtain default judgments against Plaintiffs and putative class members through fraudulent means; and the Servers Defendants providing fraudulent affidavits of service in furtherance of the scheme.  The relationships between the defendant groups are ongoing.

142) The Enterprise has for many, but not fewer than two, years been engaged in, and continues to be engaged in, activities that affect interstate commerce.  Defendants' unlawful Enterprise in violation of RICO has been and remains longstanding, continuous and open ended.

**Pattern of Racketeering Activity – Mail and Wire Fraud**

143) Defendants, individually and collectively, as an Enterprise, have engaged, directly or indirectly, a pattern of racketeering activity, as described below, in violation of 18 USC § 1962(c) & (d).

144) Defendants, acting individually and as part of the Enterprise, have devised a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses and representations.  The scheme includes but is not limited to:

a-Producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not.

b-Producing and filing false attorney affirmations stating, among other thngs, that service of the summons and complaint has been made, when in fact it was not.

c-Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretences.

145) Defendants, acting individually and as part of the Enterprise, have made fraudulent misrepresentations on specific occasions as follows:

a-On June 23, 2010, Defendants filed fraudulent affidavits of service with the Orange County Court falsely stating that service had been made, when it was not.

b-On July 2010, Defendants filed false attorney affirmations with the Orange County Clerk stating that service had been made, when it was not.

146) The fraudulent misrepresentations listed above involving the individual named plaintiffs are described in more detail above under individual plaintiffs' facts.

147) Defendants, acting individually and as part of the Enterprise, have used the mails and wires and have caused the mails and wires to be used, or reasonably knew the mails and wires would be used, in furtherance of their fraudulent scheme.  Specifically:

a- In a sworn affidavit, Defendant Azzam stated that he sent a summons and complaint to Gerardo Sanchez via U.S. mail on May 4, 2010.

b- In a sworn affidavit, Defendant Azzam stated that he sent a summons and complaint to Nirva Sanchez via U.S. mail on May 4, 2010.

c- Defendants have used the mails and wires on tens, if not hundreds, of other occasions that Plaintiffs cannot identify at this time but are known to Defendants.

148) On information and belief, each and every defendant has specific knowledge that the mails and wires are being utilized in furtherance of the overall purpose of executing the scheme to defraud, and/or it was reasonable foreseeable that the mails and wires would be used because the CPLR and other governing statutes make use of the mails and wires mandatory.  Indeed, no substitute service may be accomplished, and no default judgment can be obtained without a few uses of the mails and wires, and frequently more than a few.

149) Each of the tens, if not hundreds of uses of the mails and wires in connection with Defendants' scheme to defraud, spanning a period of years, constitutes a separate instance of mail and/or wire fraud within the meaning of 18 USC § 1341 and 1343, and thus is also a predicate act, which taken together, constitute "a pattern of racketeering activity" within the meaning of 18 USC §§ 1961 and 1962.

150) Plaintiff are entitled to recover compensatory and treble damages in an amount to be determined at trial, and to a prospective order directing Defendants to disgorge their ill-gotten gains in order to deter them from engaging in similar conduct in the future.

## THIRD CAUSE OF ACTION
(NY GBL § 349)

151) Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

152) New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state…" N.Y. Gen. Bus. Law § 349(a).

153) An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

154) As enumerated above, all Defendants violated Section 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their businesses.

155) Defendants' conduct has a broad impact on consumers at large. Defendants committed the above-described acts willfully and/or knowingly. Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

156) Defendants violations include, but are not limited to:

a-Producing and filing affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not;

46

b- Producing and filing false affidavits stating, among other things, that the a copy of the summons and complaint had been sent to Plaintiffs via the U.S. mail on May 4, 2010;

c- Producing and filing false attorney affirmations with the Orange County Clerk stating that service of the summons and complaint had been made, when it was not;

d- Using fraudulent, deceptive, and misleading affidavits and affirmations to try to obtain default judgments against Plaintiffs and class members under false pretenses;

157) As a direct and proximate result of these violations of Section 349 of the General Business Law, Plaintiffs and class members have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

## FOURTH CAUSE OF ACTION
(NY Jud. Law § 487)
(Against those Defendants who are attorneys)

158) Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

159) New York Law states that "an attorney or counsel who...is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party...[is] guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law...forfeits to the party injured treble damages, to be recovered in a civil action." NY Jud. Law § 487(1).

160) As enumerated above, Defendants-Lawyers violated § 487 of the New York Judiciary Law by engaging in deceit or collusion, or consenting to deceit or collusion, with the intention to deceive courts and opposing parties.

161) Defendants-Lawyers committed the above-described acts willfully and/or knowingly.

162) Defendants-Lawyers' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

163) Defendants-Lawyers' violations include, but are not limited to:

      a- Submitting fraudulent, deceptive and misleading affidavits;

      b- Preparing fraudulent, deceptive, and misleading affirmations;

      c- Using fraudulent, deceptive, and misleading affidavits and affirmations to try to obtain default judgments against Plaintiffs and class members under false pretenses;

164) As a direct and proximate result of these violations of Section 487 of the New York Judiciary Law, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and treble damages.

## FIFTH CAUSE OF ACTION
(Civil Rights Violations 42 USC § 1983, 18 USC 242; 18 USC § 2 (b)

165) Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

166) As enumerated above, all Defendants violated 42 USC § 1983, 18 USC 242; 18 USC § 2 (b)  by conspiring and engaging in deceit or collusion, or consenting to deceit or collusion, with the intention to deceive courts and opposing parties, and by filing, under color of law, false affidavits with the court.

167) They committed the acts willfully and/or knowingly.

168) Their wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

169) The violations include, but are not limited to:

a- Submitting fraudulent, deceptive and misleading affidavits;

b- Preparing fraudulent, deceptive, and misleading affirmations;

c- Using fraudulent, deceptive, and misleading affidavits and affirmations to try to obtain default judgments against Plaintiffs and class members under false pretenses;

d) Filing fraudulent, deceptive, and misleading affidavits and affirmations under the color of law.

170) As a direct and proximate result of these violations of 42 USC § 1983, 18 USC 242; 18 USC § 2 (b), Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and treble damages.

**WHEREFORE**, Plaintiffs and members of the class request the following relief jointly and severally as against all Defendants:

1- An order certifying this case as a class action under Fed. R. Civ. P.23.

2- A judgment declaring that Defendants have committed the violations of law alleged in this action.

3- An order enjoining and directing Defendants to comply with the NY CPLR in their debt collection activities, including without limitation:

A.  Directing Defendants to cease engaging in debt collection practices that violate the FDCPA, RICO, NY GBL § 349, NY Jud. Law § 487, and the Civil Rights Laws 42 USC 1983, 18 USC 242 and 18 USC 2(b).

B. Directing Defendants to locate class members and notify them that they filed false affidavits of service in their actions; to provide them with a copy of the affidavit; and to notify the court of the index number of each class member's case;

C. Directing that Defendants serve process in compliance with the law in any and all future actions;

4- Actual and compensatory damages against all Defendants in an amount to be proven at trial;

5- Treble damages pursuant to RICO;

6- Statutory damages pursuant to the FDCPA;

7- An order awarding disbursements, costs, and attorneys' fees pursuant to the FDCPA, RICO, NY GBL § 349 and CIVIL RIGHTS 42 USC 1983, 18 USC 242 and 18 USC 2(b).

8- Treble damages pursuant to NY Jud. Law § 487;

51

9-Treble damages pursuant to Civil Rights 42 USC 1983, 18 USC 242 and 18

USC 2(b):

10-Such other and further relief that may be just and proper, including punitive

damages.


Dated: September 29, 2010
Astoria, New York.



_Nirva Sanchez_

Nirva Sanchez, Plaintiff, pro se
38-11 Ditmars Blvd. (364)
Astoria, New York 11105-1803
Tel: (917) 682-5634
Nirva555@aol.com

Sworn to and subscribed before me on this 29th day of September, 2010.

_____
Notary Public

ZAKARIA A. ISSA
Notary Public, State of New York
No. 011S5014981
Qualified in Queens County
Commission Expires July 12, 2011



_____
Gerardo Sanchez, Plaintiff, pro se
38-11 Ditmars Blvd. (364)
Astoria, New York 11105-1803
Tel: (917) 682-5634
Polonia777@aol.com


Sworn to and subscribed before me on this 29th day of September, 2010.

_____
Notary Public

ZAKARIA A. ISSA
Notary Public, State of New York
No. 011S5014981
Qualified in Queens County
Commission Expires July 12, 2011



**PLEASE TAKE FURTHER NOTICE,** that the Condominium reserves all rights under 339-aa of the Real Property Law of New York and the By-Laws of the Condominium to pursue its remedies hereunder and any other remedies to which the Condominium may be entitled.

Dated:         April 23, 2010
               Yonkers, New York

                                          Board of Managers of The Foundry at
                                          Washington Park Condominium

                            By:  _____
                                          Rachel Andrews, President


STATE OF NEW YORK              }
                               }    ss.:
COUNTY OF  WESTCHESTER         }


Rachel Andrews, being duly sworn, deposes and says:

Deponent has read the foregoing notice of unpaid charges and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

The reason why this verification is made by deponent is that deponent is a member of the Board of Managers and deponent is familiar with the facts and circumstances herein.

                                     _____
                                          Rachel Andrews, President


Sworn to before me this
23rd day of April, 2010

_____
  Notary Public

STATE OF NEW YORK        }
                            }      ss.:
COUNTY OF   WESTCHESTER    }

On the 23rd day of April in the year 2010 before me, the undersigned personally appeared Rachel Andrews personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.

                          _____

                     (Signature and office of individual
                       taking acknowledgment)

~~Sworn to before me this~~
~~23rd day of April, 2010~~

_____
~~Notary Public~~

**PLEASE TAKE FURTHER NOTICE,** that the Condominium reserves all rights under ' 339-aa of the Real Property Law of New York and the By-Laws of the Condominium to pursue its remedies hereunder and any other remedies to which the Condominium may be entitled.

Dated:          March 23, 2010
                Yonkers, New York

                                        Board of Managers of The Foundry at
                                        Washington Park Condominium

                        By:     _____
                                Roy R. Spells, Vice President


STATE OF NEW YORK          }
                           }    ss.:
COUNTY OF ORANGE           }


Roy R. Spells, being duly sworn, deposes and says:

Deponent has read the foregoing notice of unpaid charges and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

The reason why this verification is made by deponent is that deponent is a member of the Board of Managers and deponent is familiar with the facts and circumstances herein.

                                        _____
                                        Roy R. Spells, Vice President


Sworn to before me this
23 day of March, 2010

_____
Notary Public

         ALLISA MINCHILLO
    Notary Public, State of New York
       Qualified in Orange County
     Registration No. 01MI6132948
   Commission Expires August 29, 20 _13_

STATE OF NEW YORK        }
                            }    ss.:

COUNTY OF ORANGE        }

On the 23rd day of March in the year 2010 before me, the undersigned personally appeared Roy Spells personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.

*Roy R Spells, Vice President*

(Signature and office of individual taking acknowledgment)

Sworn to before me this
23rd day of March, 2010

*Allisa Minchillo*

Notary Public

ALLISA MINCHILLO
Notary Public, State of New York
Qualified in Orange County
Registration No. 01MI6132948
Commission Expires August 29, 20 13

**PLEASE TAKE FURTHER NOTICE,** that the Condominium reserves all rights under ' 339-aa of the Real Property Law of New York and the By-Laws of the Condominium to pursue its remedies hereunder and any other remedies to which the Condominium may be entitled.

Dated:         March 2a, 2010
               Yonkers, New York

                                        Board of Managers of The Foundry at
                                        Washington Park Condominium

                              By:       _John Angelet_ (signature)
                                        John Angelet, Treasurer


STATE OF NEW YORK          }
                           }    ss.:
COUNTY OF   ORANGE         }


John Angelet, being duly sworn, deposes and says:

Deponent has read the foregoing notice of unpaid charges and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

The reason why this verification is made by deponent is that deponent is a member of the Board of Managers and deponent is familiar with the facts and circumstances herein.

                                        _John Angelet_ (signature)
                                        John Angelet, Treasurer


Sworn to before me this
22 day of March, 2010

_____
     Notary Public

JOHN LEASE III
Notary Public, State of New York
Qualified in Orange County
No. 4893815
Commission Expires May 26, 20 11

STATE OF NEW YORK            }
                            }        ss.:
COUNTY OF  ORANGE            }


On the 22 day of March in the year 2010 before me, the undersigned personally appeared John Angelet personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.


_____
(Signature and office of individual taking acknowledgment)


Sworn to before me this
22 day of March, 2010

_____
Notary Public


        JOHN LEASE III
Notary Public, State of New York
    Qualified in Orange County
          No. 4893815
Commission Expires May 26, 20 11

**PLEASE TAKE FURTHER NOTICE,** that the Condominium reserves all rights under ' 339-aa of the Real Property Law of New York and the By-Laws of the Condominium to pursue its remedies hereunder and any other remedies to which the Condominium may be entitled.

Dated:        March 25, 2010
              Yonkers, New York

                                        Board of Managers of The Foundry at
                                        Washington Park Condominium

                                        By: _____
                                            Maria S. Flores, Board Member

STATE OF NEW YORK          }
                           }    ss.:
COUNTY OF   Orange         }

Maria Flores, being duly sworn, deposes and says:

Deponent has read the foregoing notice of unpaid charges and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

The reason why this verification is made by deponent is that deponent is a member of the Board of Managers and deponent is familiar with the facts and circumstances herein.

                                        _____
                                        Maria S. Flores, Board Member

Sworn to before me this
25 day of March, 2010

_____
Notary Public

```
ROBIN MEADE
Notary Public - State of New York
NO. 01ME6204905
Qualified in Ulster County
My Commission Expires 4/27/13
```

STATE OF NEW YORK          }
                           }          ss.:
COUNTY OF *Orange*          }

On the 25 day of March in the year 2010 before me, the undersigned personally appeared Maria S. Flores personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.

*Robin Meade  Notary Public*

(Signature and office of individual taking acknowledgment)

Sworn to before me this
25 day of March, 2010

*Robin Meade*

Notary Public

---

ROBIN MEADE
Notary Public - State of New York
NO. 01ME6204905
Qualified in Ulster County
My Commission Expires 4/27/13

**PLEASE TAKE FURTHER NOTICE,** that the Condominium reserves all rights under ' 339-aa of the Real Property Law of New York and the By-Laws of the Condominium to pursue its remedies hereunder and any other remedies to which the Condominium may be entitled.

Dated:        March 22, 2010
              Yonkers, New York

                                            Board of Managers of The Foundry at
                                            Washington Park Condominium

                                   By:      _____
                                            Rodney McLean, Board Member


STATE OF NEW YORK          }
                           }        ss.:
COUNTY OF ORANGE           }


Rodney McLean, being duly sworn, deposes and says:

Deponent has read the foregoing notice of unpaid charges and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

The reason why this verification is made by deponent is that deponent is a member of the Board of Managers and deponent is familiar with the facts and circumstances herein.

                                            _____
                                            Rodney McLean, Board Member


Sworn to before me this
22 day of March, 2010
_____
Notary Public

        JOHN LEASE III
Notary Public, State of New York
    Qualified in Orange County
        No. 4893815
Commission Expires May 26, 20 11.

STATE OF NEW YORK          }
                          }          ss.:
COUNTY OF  ORANGE         }


On the _22_ day of March in the year 2010 before me, the undersigned personally appeared Rodney McLean personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.


(Signature and office of individual taking acknowledgment)


Sworn to before me this
_22_ day of March, 2010

Notary Public


JOHN LEASE III
Notary Public, State of New York
Qualified in Orange County
No. 4893815
Commission Expires May 26, 20 _11_

**PLEASE TAKE FURTHER NOTICE,** that the Condominium reserves all rights under ' 339-aa of the Real Property Law of New York and the By-Laws of the Condominium to pursue its remedies hereunder and any other remedies to which the Condominium may be entitled.

Dated:          March 25, 2010
                Yonkers, New York

                                        Board of Managers of The Foundry at
                                        Washington Park Condominium

                            By:         _____
                                        Kim Walentin, Board Member


STATE OF NEW YORK          }
                           }    ss.:
COUNTY OF ORANGE           }


Kim Walentin, being duly sworn, deposes and says:

Deponent has read the foregoing notice of unpaid charges and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

The reason why this verification is made by deponent is that deponent is a member of the Board of Managers and deponent is familiar with the facts and circumstances herein.

                                        _____
                                        Kim Walentin, Board Member


Sworn to before me this
25 day of March 2010              KENNETH W. DAVIES, JR.
                                  NOTARY PUBLIC
_____         ORANGE COUNTY, NEW YORK
Notary Public                     01DA4628056
                                  EXPIRES 12/31/02/10

STATE OF NEW YORK                    }
                                     }        ss.:
COUNTY OF  ORANGE                    }


On the 2ʃ day of March in the year 2010 before me, the undersigned personally appeared Kim Walentin personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.


_____
(Signature   and   office   of   individual   taking
acknowledgment)


Sworn to before me this
2ʃ day of March, 2010
                                     KENNETH W. DAVIES, JR.
                                     NOTARY PUBLIC
_____       ORANGE COUNTY, NEW YORK
Notary Public                          01DA4628056
                                     EXPIRES 12/31/02 10

$\mathcal{B}$

The Foundry at Washington Park Condominiums
March 10th, 2009
Special Meeting of the Board of Directors
Via Conference Call

**Present:**
- Rachel Andrews, President
- Roy Spells, Vice President
- John Angelet, Treasurer (Late, see note^)
- Maria Flores, Secretary
- Kim Walentin, Board Member
- Albert Weiss (Voting 3 interests present)
- John J. Lease (Management Agent)



**Excused:**
- Rodney Mclean, Board Member

**Notice of Meeting:**
- Via E-mail (attached)

**Location:** Meeting was called to order at 7:23 P.M. via Conference Call

**Conference Call Agenda:**
**LEGAL UPDATE and ACTION**

1. Place liens and assignment of rents on Suarez and Sanchez units*
2. Call Special Meeting of the Unit Owners 3/28/2010
3. Place liens on Phase III units*

*All non sponsor Board Members will receive individual signature sheets, sponsor will receive one signature sheet for 3 votes

**Being that Rodney McLean and John Angelet are unable to attend the meeting, a motion is made to allow for him to read the resolutions agenda items 1+2 of this meeting and sign the liens related to these resolutions at a later date, but not holding up the legal proceedings.**

**Proposed RS, Seconded AW**

# PASSED (7-0 FOR: RA, RS, MF, KW, AW)

**^John Angelet entered the conference after this motion was passed**

### 1.    Resolution of the Board of Managers of The Foundry at Washington Park Condominium

Whereas,

Foundry Development Company, LLC ("Sponsor"), the former sponsor of the condominium offering at The Foundry at Washington Park Condominium, failed to pay common

charges for any units that it owned between 1999 and the date that such units were actually sold to unaffiliated persons;

To the best knowledge of the Condominium, based on the records that it has been able to reconstruct as of the date of this resolution, such unpaid common charges total approximately $2,860,679.50, exclusive of legal fees, accrued interest, late charges and other expenses of collection which the Condominium may have the right to collect under the By-laws of the Condominium;

The Sponsor transferred title to 11 units to Polonia Ventures, LLC and Paul & Joseph Management Co., Inc., in which the Board has been advised the principals of the Sponsor, individually or collectively, have a controlling beneficial and record interest;

The By-laws of the Condominium provide in part that all unpaid sums assessed as common charges by the Board of Managers of the Condominium chargeable to any unit owner, together with interest at the maximum legal rate thereon, shall constitute a lien on such owner's unit; and

Counsel to the Sponsor has advised the Condominium that the Sponsor may not avoid its obligations to the Condominium by transferring title to Sponsor-owned units to affiliated entities;

IT IS HEREBY RESOLVED that:

1) The persons holding the office of President, Vice President, Secretary and Treasurer of the Board of Managers are authorized (together or independently) to cause the Condominium to place liens on units owned by Polonia Ventures, LLC and Paul & Joseph Management Co., Inc., affiliates of the Sponsor, in the amount of $2,860,679.50 on account of the Sponsor's unpaid common charges, and to take such further action as they may deem necessary or desirable in order to enforce such liens and collect such charges, including legal or administrative proceedings.

2) The officers are authorized to sign such documents as may be needed to implement the provisions of this Resolution, and

3) The officers are authorized to place such additional liens against units owned by the Sponsor or its affiliates that they may deem appropriate to secure payment of accrued but unpaid interest, late charges, legal fees, and other expenses of collection of the liens.

Dated March 10, 2010

**Proposed RS, Seconded JA**

# PASSED (8-0 FOR: RA, RS, JA, MF, KW, AW)

2.          **Call Special Meeting of the Unit Owners 3/28/2010**

Board discussed options for dates for a Special Unit Owners Meeting to. A 7pm meeting on 4/11 looked most possible and was to be confirmed by members who needed to check Sundays after 3/28 avoiding Jewish and Christian Holidays.

### 3.    Resolution of the Board of Managers of The Foundry at Washington Park Condominium

Whereas,

Counsel to the Sponsor has advised the Condominium that the Condominium has strong legal and equitable arguments that an amendment to the By-laws promulgated by the former Sponsor, which amendment purported to exempt unit owners from paying common charges on their units until such units were capable of being occupied, is invalid and unenforceable;

Foundry Development Group, LLC ("FDG"), the current sponsor of the condominium offering at The Foundry at Washington Park Condominium, has failed to pay common charges for any units that it owns from and after the date that it acquired title to such units;

The By-laws of the Condominium provide in part that all unpaid sums assessed as common charges by the Board of Managers of the Condominium chargeable to any unit owner, together with interest at the maximum legal rate thereon, shall constitute a lien on such owner's unit; and

The Board of Managers recognizes that it may be in the best interests of the Condominium to forbear from collection, waive or defer such common charges

IT IS HEREBY RESOLVED that:

1) The persons holding the office of President, Vice President, Secretary and Treasurer of the Board of Managers are authorized (together or independently) to cause the Condominium to place liens on units owned by FDG to enforce the obligations of FDG to make common charge payments, and to take such further action as they may deem necessary or desirable in order to enforce such liens and collect such charges, including legal or administrative proceedings.

2) In furtherance of the foregoing, the officers are authorized to negotiate agreements with FDG on behalf of the Condominium that they believe further the interests of the Condominium, which agreements may include forbearance, waiver or deferral of amounts due, so long as the Board of Managers shall have the right to approve the specific agreements that may be reached; and

3) The officers are authorized to sign such documents as may be needed to implement the provisions of this Resolution.

Dated March 10, 2010

Proposed RS, Seconded JA

## PASSED (5-0-3 FOR: RA, RS, JA, MF, KW ABSTAIN: AW)

**Motions to Close: Proposed RS, Seconded JA**
**Meeting Closed: 7:37pm**

**PROOF OF NOTICE OF MEETING**

Conference Details:
Scheduled Start Date: Wednesday, March 10, 2010
Scheduled Start Time: 7:00 PM Eastern Std Time
End Time: 7:55 PM Eastern Std Time

E-mail Invitations: 11 sent
Subject: 3/10/2010 Foundry Special Meeting of the Board
Comments/Agenda: Conference Call Agenda: LEGAL UPDATE and ACTION *
Place liens and assignment of rents on Suarez and Sanchez units *Place liens on Phase
III units Call Special Meeting of the Unit Owners 3/28/2010 *All non sponsor Board
Members will receive individual signature sheets, sponsor will receive one signature
sheet for 3 votes
Invitation Recipients:
1:Rachel Andrews rachelhaque@gmail.com
2:Albert Weiss awpyramid@gmail.com
3:Hermann Fruend hfruend@gmail.com
4:John Angelet angeletjohn@gmail.com
5:John J Lease john3@johnjleaserealtors.com
6:Ken Jacobsk jacobs@sbjlaw.com
7:Kim Walentin kwalentin@hvc.rr.com
8:Maria Flores selenflores@msn.com
9:Perry Goldman realtorrg@aol.com
10:Rodney McLean rodneymclean@hotmail.com
11:Roy Spells roy.spells@usma.edu

Call Detail Records
Date Time Dial-in #Participant's #Duration
Wednesday, March 10, 20106:59 PM219-509-8222845-614-xxxx39 Minutes
Wednesday, March 10, 20107:00 PM219-509-8222845-364-xxxx41 Minutes
Wednesday, March 10, 20107:04 PM219-509-8222845-565-xxxx37 Minutes
Wednesday, March 10, 20107:08 PM219-509-8222845-783-xxxx33 Minutes
Wednesday, March 10, 20107:10 PM219-509-8222845-563-xxxx30 Minutes
Wednesday, March 10, 20107:10 PM219-509-8222718-379-xxxx28 Minutes
Wednesday, March 10, 20107:26 PM219-509-8222917-434-xxxx12 Minutes
Conference Statistics   Total calls7     Callers present simultaneously7
Conference Booked By Rachel Andrews on Monday, March 08, 2010 at 7:57 PM
From Free Conference Reservations <reservations@conferencemgr.com>
To Rachel Andrews <rachelhaque@gmail.com>

C

**COPY**

**AFFIDAVIT OF SERVICE**

| STATE OF NEW YORK | | | | | | FILE NO.: | |
|---|---|---|---|---|---|---|---|
| COUNTY OF | ORANGE | SUPREME | COURT | FILED ON: | April 27, 2010 | INDEX NO.: | 4484/10 |

**THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK**        Plaintiff(s) - Petitioner(s)

**CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS,**

-vs-

**FOUNDRY DEVELOPMENT CO., INC., ET AL,**

       Defendant(s) - Respondent(s)

STATE OF NEW YORK

COUNTY OF    KINGS

I, **Azzam Aberrahman**   being duly sworn, deposes and says that deponent is over the age of eighteen years, is not a party

in this proceeding and resides in New York State.

On  **May 4, 2010**         at        **9:58 AM**

Deponent served the within    **SUMMONS AND COMPLAINT**

upon    **GERARDO SANCHEZ, DEFENDANT**

at address:    **20-62 49th St.**                     City & State:    **Astoria, NY 11105**

**MANNER OF SERVICE**

| | |
|---|---|
| **INDIVIDUAL** <br> 1. ☐ | By delivering a true copy of each to said recipient personally; deponent knew the person so served to be the person described as said recipient therein |
| **CORPORATION** <br> 2. ☐ | a                  corporation, by delivering thereat a true copy of each to personally, deponent knew said corporation so served to be the corporation, described in same as said recipient and knew said individual to be                        thereof |
| **SUITABLE AGE** <br> **PERSON** <br> 3. ☒ | by delivering thereat a true copy of each to    **MR. SANCHEZ (Relative)**    a person of suitable age and discretion. Said premises is recipient's    dwelling place. |
| **AFFIXING TO** <br> **DOOR, ETC.** <br> 4. ☐ | by affixing a true copy of to the door of said premises which is recipient's Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there. Deponent talked to             premises who stated that recipient |
| **MAILING TO** <br> **RESIDENCE** <br> Use with 3 or 4 <br> 5a. ☒ | On **May 4, 2010**, deponent enclosed a copy of same in a first postpaid envelope properly addresses to recipient at recipient's last known residence, at    **20-62 49th St.**        **Astoria, NY 11105** and deposited said envelope in an official depositor under the exclusive care and custody of the U.S. Postal Service within New York State. |
| **MAILING TO** <br> **BUSINESS** <br> Use with 3 or 4 <br> 5b. ☐ | On . deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient's actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the recipient. |

| **DESCRIPTION** <br> ☒ | Deponent describes the person actually served as: | | | | |
|---|---|---|---|---|---|
| | Sex:  **MALE** | Skin Color:  **BROWN SKIN** | Hair Color:  **BLACK HAIR** |
| | Approx. Age:  **36-50 YRS.** | Approx. Height:  **5'9"-6'0"** | Approx. Weight:  **161-200 LBS.** |
| | Other identifying features: | | |

| **WITNESS FEES:** <br> ☐ | $          authorizing traveling expenses and one days' witness fee |
|---|---|

| **MILITARY** <br> **SERVICE** <br> ☒ | I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Recipient wore ordinary clothes and no military uniform. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes |
|---|---|

Sworn before me on  **MAY 18. 2010**

TARA M. ANGLIN
Notary Public, State of New York
No. 01AN5035821
Qualified in Richmond County
Commission Expires Nov 14, 20___

AZZAM ABDERRAHMAN/LIC. NO. 820996

ORIGINAL FILED

FILED ORANGE COUNTY CLERK 2010 JUN 2 A 11: 49

SUPREME COURT
ORANGE COUNTY: STATE OF NEW YORK
-------------------------------------------------------------------X

THE BOARD OF MANAGERS
         Plaintiff

       -against-                Index No:4484/10

THE FOUNDRY DEVELOPMENT CO., INC., ET AL.
         Defendant
-------------------------------------------------------------------X

## **AFFIDAVIT**

SANTIAGO IGLESIAS, being duly sworn, deposes and says:

1) That I make this affidavit at the request of Gerardo Sanchez and Nirva Sanchez.

2) That on July 29, 2010, I went with Gerardo Sanchez to the Orange County Clerk's Office in Goshen, New York, and we were told that the Affidavits of Service of the Summons and Complaint for the above case were filed by Westchester Court Services ("WCS").

3) That some of those affidavits were notarized by a TARA M. ANGLIN, License #01AN5035821 and by a TARA M. MAROLLA, with the same license number.

4) That on July 30, 2010, I went to the Richmond County Clerk's Office in Staten Island, New York to inquire about Notary Public TARA M. ANGLIN, License #01AN5035821, to check her commission and her "official" signature (Notary Public License Law § 132 Certificates of Official Character of Notaries Public and § 133 Certification of Notarial

Signature). I spoke to 1st Deputy Clerk, Mario Dire, who informed me the following:

a- That he could not find any registration card under that license # nor under the name of Tara M. Anglin, nor under the name Tara M. Marolla.

b- I then showed him copies of affidavits and notarizations under those two names (See copies attached hereto as <u>Exhibit A</u>). He expressed surprise and suggested that we should contact and report this incident to the police and/or the District Attorney's Office, since there might be some sort of crime involved. (Attached hereto is a hand-written note written by Mr. Mario Dire indicating the above, as <u>Exhibit B</u>).

c- After extensive research, in search of Tara M. Anglin, I found out from the receptionist at Smith, Buss and Jacobs, LLP ("SBJ"), that SBJ was also WCS.

d- The receptionist at SBJ also told me that Tara M. Anglin was a former employee of SBJ until she became a "home-stay-mom" about two years ago.

_____
Santiago Iglesias

Sworn to and subscribed before me on this 30th day of July, 2010.

_____
Notary Public

GEORGE C. LAZARIDES
Notary Public, State of New York
Qualified in ___ County
Commission Expires Nov. _____

**AFFIDAVIT OF SERVICE**

| | | | | | | FILE NO.: | |
|---|---|---|---|---|---|---|---|
| .ATE OF NEW YORK | | | | | | | |
| COUNTY OF | ORANGE | SUPREME | COURT | FILED ON: | April 27, 2010 | INDEX NO.: | 4484/10 |

THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS,

Plaintiff(s) - Petitioner(s)

-vs-

FOUNDRY DEVELOPMENT CO. INC., ET AL.

Defendant(s) - Respondent(s)

STATE OF NEW YORK
COUNTY OF    KINGS

I, Azzam Aberrahman    being duly sworn, deposes and says that deponent is over the age of eighteen years, is not a party in this proceeding and resides in New York State.

On    May 4, 2010    at    9:50 AM
Deponent served the within    SUMMONS AND COMPLAINT
upon    NIRVA SANCHEZ, DEFENDANT
at address:    20-62 49th St.    City & State:    Astoria, NY 11105

**MANNER OF SERVICE**

INDIVIDUAL    By delivering a true copy of each to said recipient personally; deponent knew the person so served to be the
1. [ ]    person described as said recipient therein

CORPORATION    a    corporation, by delivering thereat a true copy of each to
2. [ ]    personally, deponent knew said corporation so served to be the corporation, described in same as said
recipient and knew said individual to be    thereof

SUITABLE AGE
PERSON    by delivering thereat a true copy of each to    MR. SANCHEZ (Relative)    a person of suitable age and discretion.
3. [X]    Said premises is recipient's    dwelling place.

AFFIXING TO
DOOR, ETC.    by affixing a true copy of to the door of said premises which is recipient's
4. [ ]    Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereof, having
called there. Deponent talked to    premises who stated that recipient

MAILING TO
RESIDENCE    On May 4, 2010, deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient
Use with 3 or 4    at recipient's last known residence, at    20-62 49th St.    Astoria, NY 11105
5a. [X]    and deposited said envelope in an official depositor under the exclusive care and custody of the U.S. Postal Service within
New York State.

MAILING TO
BUSINESS    On , deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient's actual place of
Use with 3 or 4    business, at
5b. [ ]    in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.
The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof,
by return address or otherwise, that the communication was from an attorney or concerned an action against the recipient.

DESCRIPTION    Deponent describes the person actually served as:
[X]    Sex:    MALE    Skin Color:    BROWN SKIN    Hair Color:    BLACK HA
Approx. Age:    36-50 YRS.    Approx. Height:    5'9"-6'0"    Approx. Weight:    161-200 LB
Other identifying features:

WITNESS FEES:
[ ]    $    authorizing traveling expenses and one days' witness fee

MILITARY
SERVICE    I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative
[X]    reply. Recipient wore ordinary clothes and no military uniform. The source of my information and the grounds of my belief are the conversations and observations above
narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in
the Federal statutes.

Sworn before me on    May 18, 2010

AZZAM ABDERRAHMAN/LIC. NO. 820886

**AFFIDAVIT OF SERVICE**

| STATE OF NEW YORK | | | | | | FILE NO.: | |
| COUNTY OF | ORANGE | SUPREME | COURT | FILED ON: | April 27, 2010 | INDEX NO.: | 4484/10 |

THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS,

Plaintiff(s) - Petitioner(s)

-vs-

FOUNDRY DEVELOPMENT CO., INC., ET AL,

Defendant(s) - Respondent(s)

STATE OF NEW YORK
COUNTY OF    KINGS
I, **Azzam Aberrahman**    being duly sworn, deposes and says that deponent is over the age of eighteen years, is not a party
in this proceeding and resides in New York State.
On    **May 4, 2010**    at    **9:58 AM**
Deponent served the within    **SUMMONS AND COMPLAINT**
upon    **GERARDO SANCHEZ, DEFENDANT**
at address:    **28-82 49th St.**    City & State:    **Astoria, NY 11108**

**MANNER OF SERVICE**

| INDIVIDUAL 1. | [ ] | By delivering a true copy of each to said recipient personally;  deponent knew the person so served to be the person described as said recipient therein |
| CORPORATION 2. | [ ] | a    corporation, by delivering thereof a true copy of each to personally, deponent knew said corporation so served to be the corporation, described in same as said recipient and knew said individual to be    thereof |
| SUITABLE AGE PERSON 3. | [X] | by delivering thereat a true copy of each to    **MR. SANCHEZ (Relative)**    a person of suitable age and discretion. Said premises is recipient's    dwelling place. |
| AFFIXING TO DOOR, ETC. | [ ] | by affixing a true copy of to the door of said premises which is recipient's Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there. Deponent talked to    premises who stated that recipient |
| MAILING TO RESIDENCE to wit 3 or 4 | [X] | On May 4, 2010, deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient at recipient's last known residence, at    **28-82 49th St.**    **Astoria, NY 11108** and deposited said envelope in an official depositor under the exclusive care and custody of the U.S. Postal Service within New York State. |
| MAILING TO BUSINESS to wit 3 or 4 | [ ] | On , deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient's actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the recipient. |
| DESCRIPTION | [X] | Deponent describes the person actually served as: |

| Sex: | **MALE** | Skin Color: | **BROWN SKIN** | Hair Color: | **BLACK HAIR** |
| Approx. Age: | **36-50 YRS.** | Approx. Height: | **5'9-6'0"** | Approx. Weight: | **161-200 LBS.** |

Other identifying features:

| WITNESS FEES | [ ] | $    authorizing traveling expenses and one days' witness fee |
| MILITARY SERVICE | [X] | I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Recipient wore ordinary clothes and no military uniform. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes. |

Sworn before me on    **MAY 18, 2010**

ERIKA ANGLIN
Notary Public State of New York
No. 01AN5028821
Qualified in Richmond County
Commission Expires Nov 14, 2010

AZZAM ABDERRAHMAN/LIC. NO. 820996

2010  12:10    845-294-2088    PETER BOTTI ESQ    PAGE  10/11

**AFFIDAVIT OF DUE DILIGENCE**

| STATE OF NEW YORK | | | | | FILE NO.: |
| COUNTY OF | ORANGE | SUPREME | COURT | FILED ON: | April 27, 2010 | INDEX NO.: | 4 |

THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS,                          Plaintiff(s) - Petitioner(s)

                                                    -vs-

FOUNDRY DEVELOPMENT CO., INC., ET AL,                              Defendant(s) - Respondent(s)

STATE OF NEW YORK
COUNTY OF    KINGS

        I,  Jose Laracuente    being duly sworn, deposes and says that deponent is over the age of eighteen years, is not a party
in this proceeding and resides in New York State.

I hereby declare under penalties of perjury that I attempted to serve the within:
**SUMMONS AND COMPLAINT**
upon          **FOUNDRY DEVELOPMENT CO., INC., DEFENDANT**
On            **May 26, 2010**              at        1:30 PM

After due and diligent search and inquiry, I am unable to find the within named party       FOUNDRY DEVELOPMENT CO., INC.
at address:      38-11 Ditmars Blvd.                                        City & State:     Astoria, NY 11105

**SERVICE HAS NOT BEEN EFFECTED BECAUSE:**

☐ Moved, forwarding address unknown                          ☐ Unknown at address
☐ No longer employed at place of business.                    ☒ Incorrect place for service
☐ Party could no longer be served within the prescribed       ☐ Party is evading service
   time before hearing date                                   ☐ Service cancelled by litigant
☒ Other:          Location is a Mailboxes & More.  Spoke with Mr. Williams, Manager, who stated that
                  Foundry Development Co., Inc. was not located at this address but did maintain a
                  P.O. Box there.

Sworn before me on      6/9/10

TARA M. MAROTTA
NOTARY PUBLIC, State of New York
No. 01MA5035821
Qualified in Richmond County
Commission Expires November 14, 2010

JOSE LARACUENTE/LIC. NO. 1338066

2/2010  12:10    845-294-2088       PETER BOTTI ESQ                    PAGE  01/11

**AFFIDAVIT OF DUE DILIGENCE**

STATE OF NEW YORK
COUNTY OF     ORANGE          SUPREME     COURT      FILED ON:     April 27, 2010

FILE NO.:
INDEX NO.:                4484/10

THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS,

                                                              Plaintiff(s) - Petitioner(s)

                                    -vs-

FOUNDRY DEVELOPMENT CO., INC., ET AL.,

                                                              Defendant(s) - Respondent(s)

STATE OF NEW YORK
COUNTY OF     KINGS

    I,  Jose Laracuente     being duly sworn, deposes and says that deponant is over the age of eighteen years, is not a party
in this proceeding and resides in New York State.

I hereby declare under penalties of perjury that I attempted to serve the within:
SUMMONS AND COMPLAINT
upon        POLONIA VENTURES LLC, DEFENDANT
On          May 20, 2010            at         1:20 PM

After due and diligent search and inquiry, I am unable to find the within named party           POLONIA VENTURES LLC,
at address:     36-11 Ditmars Blvd., Suite 704                                    City & State:      Astoria, NY 11106

SERVICE HAS NOT BEEN EFFECTED BECAUSE:

☐ Moved, forwarding address unknown
☐ No longer employed at place of business
☐ Party could no longer be served within the prescribed
   time before hearing date
☒ Other:              Location is a Mailboxes & More.  Spoke with Mr. Williams, Manager, who stated that
                      Polonia Ventures LLC was not located at the address but did maintain a
                      P.O. Box there.

☐ Unknown at address
☒ Incorrect place for service
☐ Party is evading service
☐ Service cancelled by litigant

Sworn before me on     6/9/10

TARA M. MAROLLA
NOTARY PUBLIC, State of New York
No. 01MA5035821
Qualified in Richmond County
Commission Expires November 14, 20/0

JOSE LARACUENTE LIC. NO. 1396088

2010  12:10    845-294-2688

**AFFIDAVIT OF DUE DILIGENCE**

| STATE OF NEW YORK | | | | | | FILE NO.: | |
| COUNTY OF | ORANGE | SUPREME | COURT | FILED ON: | April 27, 2010 | INDEX NO.: | 4484 |

THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS.

Plaintiff(s) - Petitioner(s)

-vs-

FOUNDRY DEVELOPMENT CO., INC., ET AL.

Defendant(s) - Respondent(s)

STATE OF NEW YORK
COUNTY OF    KINGS

I, Jose Laracuente    being duly sworn, deposes and says that deponent is over the age of eighteen years, is not a party in this proceeding and resides in New York State.

I hereby declare under penalties of perjury that I attempted to serve the within:
SUMMONS AND COMPLAINT
upon          FOUNDRY DEVELOPMENT CO., INC., DEFENDANT
On            May 26, 2010        at        1:30 PM

After due and diligent search and inquiry, I am unable to find the within named party
at address:      38-11 Ditmars Blvd.

FOUNDRY DEVELOPMENT CO., INC.
City & State:      Astoria, NY 11106

SERVICE HAS NOT BEEN EFFECTED BECAUSE:

| | |
|---|---|
| ☐ Moved, forwarding address unknown | ☐ Unknown at address |
| ☐ No longer employed at place of business | ☒ Incorrect place for service |
| ☐ Party could no longer be served within the prescribed time before hearing date | ☐ Party is evading service |
| | ☐ Service cancelled by litigant |
| ☒ Other:      Location is a Mailboxes & More.  Spoke with Mr. Williams, Manager, who stated that Foundry Development Co., Inc. was not located at the address but did maintain a P.O. Box there. | |

Sworn before me on      6/9/10

_signature_
TARA M. MAROLLA
NOTARY PUBLIC, State of New York
No. 01MA5035821
Qualified in Richmond County
Commission Expires November 14, 2010

_signature_
JOSE LARACUENTE/LIC. NO. 1338088

So Ordered subpoena

on

Court Order

directing the County Clerk
of Richmond to provide complete
and true copies of all
records related to Notary
Tara M. Anglin aka

D ATTORNEY / POLICE
DEPT

E

The New York City Department of Consumer Affairs
LICENSING CENTER
42 Broadway, 5th floor
New York, NY 10004
Renewal Unit Telephone: (212) 487-3000



Jonathan Mintz, Commissioner
www.nyc.gov/consumers

## (INDIVIDUAL) DUPLICATE RENEWAL APPLICATION

LICENSE CODE: 110          CLASS: ____          SUBCLASS: ____

LICENSEE'S NAME: Abderahman, Azzam  M  N

MAILING ADDRESS: 13to  la  Street

Bkyn  N.Y. 1109

CAMIS ID: 1108900          LICENSE #: 0820942

FEE : $ 910          YOUR LICENSE EXPIRES: 6/28/08

RECEIVED
FEB 28 2008
CONSUMER AFFAIRS

## NOTE TO APPLICANT: PLEASE COMPLETE BELOW

### PART 2

| New Mailing Address (if different from above) | | |
|---|---|---|
| | | |
| * Current Home Address: ▓▓▓▓▓▓▓▓▓ | * Current Telephone No: 718-614-9293 | Email Address: |
| * Name of your Employer (if applicable): ▓▓▓▓▓▓▓ | * Employer License Number (if applicable): | |
| Additional Employers Names (if applicable): | Additional License Numbers (if applicable): | |
| | | |
| | | |

\* Indicates **REQUIRED FIELDS**

All questions below must be answered "Yes" or "No." If any questions in Part 3 are answered "YES," you must call our renewal unit for further instructions at (212) 487-4060. If the answers to all questions are "NO," return this form by mail or in person together with all other required documents and fees.

### PART 3:

Since you originally applied for this license or last completed a renewal application:

1. a. Have you been convicted of **ANY** crime or offense?  ☐ Yes ☐ No
   b. Are you now facing **ANY** pending *criminal* OR *civil* charge(s)?  ☐ Yes ☐ No
   (You may omit parking violations and offenses that resulted in a finding of juvenile delinquency, youthful offender status and minor or person in need of supervision.)

2. Has **ANY** license or permit issued to you by any government agency been cancelled, suspended or revoked?  ☐ Yes ☑ No

3. Has **ANY** proceeding or action been initiated against you by DCA or **ANY** other government agency?  ☐ Yes ☑ No

## PART 4:

1. Are you under an obligation to pay child support?  ☐ Yes ☑ No

If NO, skip to **Affirmation**. If YES, answer **ALL** questions below by checking the appropriate box: "Yes" or "No."

a. Do you owe four or more months of child support payments?  ☑ Yes ☐ No

b. Are you making child support payments by income execution or court Approved Payment plan or by a plan agreed to by the parties?  ☐ Yes ☐ No

c. Is your child support obligation the subject of a pending proceeding?  ☑ Yes ☐ No

d. Do you receive public assistance or supplemental security income?  ☑ Yes ☐ No

### Affirmation:

☐ **By checking this box, I affirm that I am the license applicant or duly authorized by the license applicant to complete and submit this form. I affirm that the information entered above is true and accurate and I understand that lying on this application is a crime punishable by a fine, imprisonment, or both. A fine for each false statement, as high as $500.00, may be imposed by DCA. In addition, each false statement is punishable by a fine as high as $1,000.00 if prosecuted criminally.**

**In addition, I understand that the submission of this application does not mean that my license has been renewed and that any operation of my business after the expiration of my current license and before the issuance of a new license document may subject me to penalties.**

| * Licensee's First Name: | * Last Name | Date: |
|---|---|---|
| Azzam | Abderrahman | 7-25-08 |

* Indicates **REQUIRED FIELDS**   Revised 08/24/07

* SIGNATURE:   DATE 7-25-08

BELOW SPACE FOR DEPARTMENT USE ONLY

APPROVED BY: _____   DATE _____

*F*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-----------------------------------------------------------------------------

THE BOARD OF MANAGERS OF FOUNDRY AT
WASHINGTON PARK CONDOMINIUM, AS AGENT     Index #4484/10
FOR ALL UNIT OWNERS

         Plaintiff,

Vs.

FOUNDRY DEVELOPMENT CO., INC.,
PAUL & JOSEPH MANAGEMENT COMPANY, INC.,
POLONIA VENTURES, LLC,
GERARDO SANCHEZ, NIRVA SANCHEZ, JOSEPH SUAREZ
and "JOHN DOE" and/or "JANE DOE,"
the last two names being fictitious and unknown to plaintiff,
the person or parties intended being the persons or parties,
if any, having or claiming an interest in or lien upon the
mortgaged premises described in the complaint

         Defendants

-----------------------------------------------------------------------------

## AFFIDAVIT

MARITZA ALVAREZ, being duly sworn deposes and says:

1) That I make this affidavit at the request of Gerardo Sanchez and Nirva Sanchez ("Gerry and Nirva"), and in support of their motions to dismiss the complaint against them for lack of proper service.

2) That I live at 20-62 49th St., Astoria, New York 11105 and have been living there for approximately ten years.

3) That I work for Gerry and Nirva as housekeeper. One of my duties is to receive the everyday mail.

4) That I am in the house every single day of the week except on week-ends.

1

5) That since Gerry and Nirva have a mailing box address at a different location, there are very few pieces of mail received at 20-62 49th St., Astoria, NY 11105. Those envelopes are limited to two or three credit card statements, and a magazine.

6) That they have never received an envelope thicker than 1/8".

7) That during the year 2010, no person has been to the house to leave documents for them.

8) That Gerry, Nirva, and I, are the only occupants of the house.

9) That there is no such thing as a Sanchez's relative.

10) That as usual, I was in the house on Tuesday, May 4, 2010 at 9:58 A.M.

11) That the statement made by a process server that he was there on that date and served legal papers on a "Mr. Sanchez (relative)" is an outright lie.


_Maritza Alvarez_ (signature)

Maritza Alvarez


Sworn and subscribed before me on this 20th day of July, 2010.

_Notary_ (signature)

Notary Public


GARY HART
Notary Public State of New York
No. 01HA308824
Qualified in Nassau County
Commission Expires November 17, 2012

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-------------------------------------------------------------------------

THE BOARD OF MANAGERS OF FOUNDRY AT
WASHINGTON PARK CONDOMINIUM, AS AGENT         Index #4484/10
FOR ALL UNIT OWNERS

        Plaintiff,

Vs.

FOUNDRY DEVELOPMENT CO., INC.,
PAUL & JOSEPH MANAGEMENT COMPANY, INC.,
POLONIA VENTURES, LLC,
GERARDO SANCHEZ, NIRVA SANCHEZ, JOSEPH SUAREZ
and "JOHN DOE" and/or "JANE DOE,"
the last two names being fictitious and unknown to plaintiff,
the person or parties intended being the persons or parties,
if any, having or claiming an interest in or lien upon the
mortgaged premises described in the complaint

        Defendants

-------------------------------------------------------------------------

## AFFIDAVIT

GERARDO SANCHEZ, being duly sworn deposes and says:

1) That I make this affidavit in support of Nirva Sanchez' ("Nirva"), reply to the opposition to her motion to dismiss the complaint for lack of proper service.

2) That I live at 20-62 49th St., Astoria, New York 11105 and have been living there for approximately ten years.

3) That I'm Nirva's husband.

4) That since we both have a mailing box address at a different location, there are very few pieces of mail received at 20-62 49th St., Astoria, NY 11105. Those envelopes are limited to two or three credit card statements, and a magazine.

5) That we have never received an envelope thicker than 1/8".

1

6) That during the year 2010, no person has been to the house to leave documents for us, in particular, legal papers.

7) That Nirva, our housekeeper Maritza Alvarez, and I, are the only occupants of the house.

8) That there is no such thing as a "Sanchez's relative."

9) That I read the affidavit of service signed by Mr. Azzam Abderrahman, that was filed with the court in this case, and further state, that it contains numerous false statements.  Specifically:

A- The process server swore that he left the bulky papers (about 2" thick) with a "Mr. Sanchez (Relative)" at my residence, but no such person resides with me, my wife and my housekeeper.

B- The process server swore that he spoke to "Mr. Sanchez (Relative)" and confirmed that my wife (71-years-old) was not in the military or dependent on anyone in the military, but I do not know "Mr. Sanchez (Relative)" so this person would be unable to confirm her military status.

C- The process server swore that "Mr. Sanchez (Relative)" was male, brown skin, 36-50 years old, 5'9"--6'0", 161-200 lbs. (with no other identifying features), but I don't know anyone who fits that description in the vicinity of the house.  (You can not reach the house without first jumping over a fence in front of the house).

D- The process server swore that he mailed a copy of the summons and complaint to us on May 4, 2010, but we never received a copy of the summons and complaint by mail.

10) That the statement made by a process server that he was there on May 4, 2010,

and served legal papers on a "Mr. Sanchez (relative)" is an outright lie.


Gerardo Sanchez


Sworn and subscribed before me on this 21st day of July, 2010.


Notary Public

**DIMITRIOS VASSOS**
**Notary Public, State of New York**
**No. 01VA4089720**
**Qualified in Queens County**
**Certifcate Filed in New York County**
**Commission Expires Jult 31, 2013**

3

$G$

*STATE OF NEW YORK,*     }    **ss.:**

*DEPARTMENT OF STATE.*    }


       *I Hereby Certify* that I have made a diligent and complete search of the records of the Department of State, Division of Licensing Services relating to **Section 130 of the Executive Law**, as amended, with respect to **Notaries Public** which records are in the custody and under the control of the Secretary of State, and find


no record of **Tara Anglin** being commissioned as a Notary Public from at least *01/01/2004 through the present.


*Indicates prior records which have been destroyed according to our scheduled rate of destruction.

       **Witness** my hand and the Official Seal of the Department of State, at the City of Albany, this **nineteenth** day of **August, two thousand ten.**


*Kathleen M. McCoy*

Kathleen M. McCoy
Special Deputy Secretary of State

**TARA last name comparison table**

**(Born : April 5, 1969 )**

As of   September 2-2010

| Subject | Name Used | Date | License   Expiration Date | Notarizing | Service on |
|---|---|---|---|---|---|
| 1st Lic Application | Tara M Marolla | | November 14, 2002 | | |
| ReNewal | Tara M Marolla | November 14, 2002 | November 14, 2006 | | |
| 2nd Renewal | Tara M Marolla | November 14, 2006 | November 14, 2010 | | |
| | | | | | |
| Affidavit of Service | Tara M Anglin | May 18, 2010 | November 14, 2013 | Azzam Abderrahman | Gerardo Sanchez |
| Affidavit of Service | Tara M Anglin | May 18, 2010 | November 14, 2010 | Azzam Abderrahman | Nirva Sanchez |
| Affidavit of Service | Tara M Marolla | June 9, 2010 | November 14, 2010 | Jose Laracuente | Polonia Ventures |
| Affidavit of Service | Tara M Marolla | June 9, 2010 | November 14, 2010 | Jose Laracuente | Foundry Development |

H

2010  12:10     845-294-2088          PETER BUTTI ESQ          PAGE  02/11

**AFFIDAVIT OF SERVICE**

| | | | | | FILE NO.: | |
|---|---|---|---|---|---|---|
| STATE OF NEW YORK | | | | | | |
| COUNTY OF | ORANGE | SUPREME | COURT | FILED ON: | April 27, 2010 | INDEX NO.: | 4484/10 |

THE BOARD OF MANAGERS OF FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, AS AGENT FOR ALL UNIT OWNERS,                    Plaintiff(s) - Petitioner(s)

                                                                  -vs-

FOUNDRY DEVELOPMENT CO., INC., ET AL.

                                                           Defendant(s) - Respondent(s)

STATE OF NEW YORK
COUNTY OF     KINGS

    I. **Azzam Aberrahman**    being duly sworn, deposes and says that deponent is over the age of eighteen years, is not a party
in this proceeding and resides in New York State.
On           **May 4, 2010**                  at           **9:68 AM**          .
Deponent served the within           **SUMMONS AND COMPLAINT**
upon        **NIRVA SANCHEZ, DEFENDANT**
at address:    **20-62 49th St.**                                       City & State:    **Astoria, NY 11105**

**MANNER OF SERVICE**

INDIVIDUAL
1. ☐           By delivering a true copy of each to said recipient personally; deponent knew the person so served to be the
person described as said recipient therein

CORPORATION
2. ☐           a                                    corporation, by delivering thereat a true copy of each to
personally, deponent knew said corporation so served to be the corporation, described in same as said
recipient and knew said individual to be                                                     thereof

SUITABLE AGE
PERSON
3. ☒           by delivering thereat a true copy of each to        **MR. SANCHEZ (Relative)**        a person of suitable age and discretion.
Said premises is recipient's            dwelling place.

AFFIXING TO
DOOR, ETC.
4. ☐           by affixing a true copy of to the door of said premises which is recipient's
Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having
called there. Deponent talked to                                          premises who stated that recipient

MAILING TO
RESIDENCE
Use with 3 or 4
5a. ☒          On May 4, 2010, deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient
at recipient's last known residence, at        **20-62 49th St.**        **Astoria, NY 11105**
and deposited said envelope in an official depositor under the exclusive care and custody of the U.S. Postal Service within
New York State.

MAILING TO
BUSINESS
Use with 3 or 4
6a. ☐          On , deponent enclosed a copy of same in a first postpaid envelope properly addressed to recipient's actual place of
business, at
In an official depositary under the exclusive care and custody of the U.S. Postal Service within New York State.
The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof,
by return address or otherwise, that the communication was from an attorney or concerned an action against the recipient.

DESCRIPTION
☒           Deponent describes the person actually served as:
Sex:            **MALE**        Skin Color:    **BROWN SKIN**        Hair Color:    **BLACK HA**
Approx. Age:    **36-50 YRS.**    Approx. Height:    **5'9"-6'0"**        Approx. Weight:    **161-200 LB**
Other identifying features:

WITNESS FEES
☐                     $              authorizing traveling expenses and one days' witness fee

MILITARY
SERVICE
☒           I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative
reply. Recipient wore ordinary clothes and no military uniform. The source of my information and the grounds of my belief are the conversations and observations above
narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in
the Federal statutes.

Sworn before me on      **MAY 18, 2010**

_____                              _____
                                                     AZZAM ABDERRAHMAN/LIC. NO. 820996

$\mathcal{I}$

7/2/10 ×

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

THE BOARD OF MANAGERS OF FOUNDRY AT
WASHINGTON PARK CONDOMINIUM, AS
AGENT FOR ALL UNIT OWNERS,

Index No. 4484/10

                         Plaintiff,

AFFIRMATION OF JOHN
J. MALLEY IN
OPPOSITION TO
GERARDO SANCHEZ'
ORDER TO SHOW CAUSE

  – against –

FOUNDRY DEVELOPMENT CO., INC., PAUL &
JOSEPH MANAGEMENT COMPANY, INC.,
POLONIA VENTURES LLC, GERARDO
SANCHEZ, NIRVA SANCHEZ, JOSEPH
SUAREZ and "JOHN DOE" and/or "JANE DOE
the last 2 names being fictitious and unknown to
plaintiff, the persons or parties intended being the
persons or parties, if any, having or claiming an
interest in or lien upon the mortgaged premises
described in the complaint,

                        Defendants.

JOHN J. MALLEY, an attorney duly admitted to practice law in the State of New York,

affirms the following under the penalties of perjury:

      1.    I am a partner of Smith Buss Jacobs, LLP ("SBJ"), counsel for plaintiff The

Board of Managers of Foundry at Washington Park Condominium, As Agent For All Unit

Owners ("The Foundry").

      2.    I submit this affirmation in opposition to defendant Gerardo Sanchez'

("Sanchez") application, by order to show cause, for an order:

      (a) "[D]irecting the production of evidence of the authority of the Plaintiff's attorney to

begin the action",

      (b) "Enjoining the law firm of Smith, Buss and Jacobs, LLP, from representing the above

Plaintiff in this case against this Defendant because of their misconduct in the related case before

1

Dated: Yonkers, New York
      July 2, 2010

JOHN J. MALLEY



# SANDY STEVENS

### Certified Document Examiner

**35-43 84th Street, Suite 327 · Jackson Heights, NY 11372**
**Telephone [718] 429-5998 · Fax [718] 429-0814**

August 31, 2010

Gerardo & Nirva Sanchez,
Polonia Ventures, LLC
38-11 Ditmars Avenue
Astoria, NY 11105
(718) 728-7939

**Re:**   **The Questioned Signature of John J. Malley, Esq. AKA "Jack Malley"**

Dear Mr. and Mrs. Sanchez:

I carefully studied the 9 (Nine) similar **Standard Signatures of John J. Malley, Esq.**
on the following Documents:

1.    Summons, April 26, 2010
2.    Complaint, April 27, 2010
3.    Affirmation of John J. Malley, July 2, 2010
4.    Affirmation of John J. Malley, July 2, 2010
5.    Affirmation of John J. Malley, July 2, 2010
6.    Notice of Motion for Default Judgment, July 28, 2010
7.    Affirmation of John J. Malley, July 28, 2010
8.    Affirmation of John J. Malley, August 10, 2010
9.    Letter to Judge, signed Jack Malley, August 18, 2010

I carefully studied the **Questioned Signature of John J. Malley** on page 9 of the
AFFIRMATION OF JOHN J. MALLEY IN OPPOSITION TO GERARDO SANCHEZ'
ORDER TO SHOW CAUSE dated July 2, 2010.

I also carefully studied the 9 (Nine) **Standard Signatures of John J. Malley,** and compared
them with the **Questioned Signature of John J. Malley,** and it is my professional opinion that
the Questioned Signature of John J. Malley was not written by John J. Malley, and that it is a
"simple forgery" and bears no resemblance to the 9 John J. Malley Standards.

All of the documents were clear photocopies and no faxes.

I have been court qualified for almost 40 years, and I am prepared to make multiple enlarged court exhibits to demonstrate my findings.

Yours truly,

Sandy Stevens CDE
Amanda Stevenson DBA Sandy Stevens

Dated: Yonkers, New York
      July 2, 2010

                                          JOHN J. MALLEY



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

GERARDO SANCHEZ,

                    Petitioner,

   – against –

THE FOUNDRY AT WASHINGTON PARK
CONDOMINIUM, MOSUR HAQUE, RACHEL
HAQUE, JOHN J. LEASE MANAGEMENT CO.,
INC.,

                    Respondents.

Index No. 34138/09

AFFIDAVIT OF
RACHEL ANDREWS

**Rachel Andrews,** being duly sworn, hereby deposes and says:

1.     I am one of the Respondents named in this proceeding.  The Petitioner, Gerardo Sanchez ("Sanchez"), incorrectly identified me as Rachel Haque in the Caption of this case.  I am married to MONZUR HAQUE, a Co-Respondent in this action.

2.     I am the President of the Board of Directors of the Foundry at Washington Park Condominium (the "Foundry").  As such, I am personally familiar with the relevant facts of this case.

2.     I submit this affidavit in opposition to the Order to Show Cause, in which Sanchez seeks an Order granting him the right to examine the Foundry's books and records.

3.     In an apparent attempt to defame and denigrate me and my husband, Sanchez attempts to paint a picture of us as some sort of terrorists who are involved in a conspiratorial cell that somehow threatens homeland security and acts to place obstacles in his path to preclude him from examining the Foundry's books and records.  (Petition ¶¶ 3-6, 8-11).  This is simply ridiculous.

8.     On or about October 25, 2009, I learned that Sanchez wanted to examine the Foundry's books and records.  I emailed him to advise him that recent bank records will be made available for his inspection at the Exit 10 office, and asked him to identify the additional books and records he sought to examine.  A copy of my October 25, 2009 email to Sanchez is attached hereto as Exhibit "A".  Notably, although my email clearly advised Sanchez of access to the recent bank statements, Sanchez never attempted to schedule a time to inspect them.

9.     My October 25, 2009 email demonstrates that there is no conspiracy to deprive Sanchez of his right to examine the Foundry's books and records.

10.     Rather, it is obvious that Sanchez's defamatory statements and inaccurate assertions that Respondents have denied him access to the Foundry's books and records transcend the boundaries of decency.  Sanchez's Order to Show Cause seeking access to the Foundry's books and records is not based on any legitimate business purpose, but appears instead to be an attempt to harass Respondents.

11.     Accordingly, this Court should not allow Sanchez to abuse the litigation process by granting his Order to Show Cause and, as such, should deny him access to the Foundry's books and records.

Rachel Andrews

1/30/2010

Sworn to before me this
30 day of January, 2010

Notary Public

KENNETH ROBERT JACOBS
Notary Public, State of New York
No. 02JA6048697
Qualified in Westchester County
Commission Expires Oct. 2, 20__



# SANDY STEVENS

**Certified Document Examiner**

**35-43 84th Street, Suite 327 · Jackson Heights, NY 11372**
**Telephone [718] 429-5998 · Fax [718] 429-0814**

August 31, 2010

Gerardo & Nirva Sanchez,
Polonia Ventures, LLC
38-11 Ditmars Avenue
Astoria, NY 11105
(718) 728-7939

**Re:   The Two Questioned Notary Signatures of Kenneth Robert Jacobs**

Dear Mr. and Mrs. Sanchez:

I carefully studied the similar **Standard Signatures of Kenneth Robert Jacobs**
on the following Documents:
1.      Letter, August 13, 2010            [not a fax]
2.      Letter, October 20th, 2009        [not a fax]

After carefully studying **Questioned Signature A of Kenneth Robert Jacobs** on the
AFFIDAVIT OF RACHEL ANDREWS dated January 30, 2010 and the **Questioned Signature
B of Kenneth Robert Jacobs on the** AFFIDAVIT OF MONSUR HAQUE dated January 30,
2010 and after carefully comparing the Questioned Signature A of **Kenneth Robert Jacobs** with
two other **Kenneth Robert Jacobs** Standard Signatures, it is my professional opinion that the
Questioned Signatures A & B of **Kenneth Robert Jacobs** was not written by **Kenneth Robert
Jacobs.**

Yours truly,

Sandy Stevens CDE
Amanda Stevenson DBA Sandy Stevens

Very truly yours,

*Kenneth Jacobs*

OCT · 20 · 2009

---

*Kenneth Jacobs*

AUG · 13 · 2010

letter · (found)

---

Sworn to before me this,
30 day of January, 2010

Notary Public

KENNETH ROBERT JACOBS
Notary Public, State of New York
No. 02JA6048697
Qualified in Westchester County
Commission Expires Oct. 2, 2010

JAN 30 · 2010
AFFIDAVIT OF
RACHEL HAQUE

---

Sworn to before me this
30 day of January, 2010

Notary Public

KENNETH ROBERT JACOBS
Notary Public, State of New York
No. 02JA6048697
Qualified in Westchester County
Commission Expires Oct. 2, 2010

JAN 30 2010
AFFIDAVIT OF
MONZUR HAQUE

KENNETH ROBERT JACOBS
Notary Public, State of New York
No. 02JA6048697
Qualified in Westchester County
Commission Expires Oct. 2, 2010

# DONALD FRANGIPANI
## EXAMINER OF QUESTIONED DOCUMENTS

7119 13th Avenue ~ Brooklyn, N.Y. 11228
Phone (718) 232-3209 ~ E-Mail: Dfrangipani@aol.com

*August 27, 2010*

Gerardo Sanchez
Polonia Development &
Preservation Services Co. LLC.
38-11 Ditmars Boulevard #364
Astoria, New York 11105

*Re: Kenneth Jacobs*

### *Questioned Signature Report*

### *Purpose of Examination*

*To determine if Kenneth Jacobs wrote questioned signature.*

### *Questioned Signature*

*Photoreproduction of Notary Public stamp of Kenneth Robert Jacobs, no. 02JA6048697, dated: 30 January 2010 bearing the questioned signature of Kenneth Jacobs.*

### *Comparison Signatures*

*K-1    Two (2) alleged known/genuine signatures, dated: Oct. 20, 2009 and August 13,2010.*
*&*
*K-2*

*1*

*Re: Kenneth Jacobs*

### Examination

*The identification of handwriting is based on a combination of consistent writing patterns found in both known and questioned writings. These handwriting patterns include such features as letter construction, I-dots, t-bars, height, proportion, slant, base-line, line quality, pen pressure, spacing, individual characteristics, overall letter appearance and writing skill.*

### Findings

*After a careful scientific examination and based on limited known specimens, it is "highly probable¹ Kenneth Jacobs did not sign the questioned signature.*

### Remarks

*These findings are predicated on the examination of photoreproductions. Photoreproductions are susceptible to manipulation (e.g. tracing, cut and paste). Pen pressure, pen stop and type of writing instrument cannot be observed. Therefore it is necessary to examine the original documents.*

*Any questions regarding this report should be addressed to the undersigned.*

sworn before
me on 8/30/10

*Respectfully submitted,*

Donald Frangipani
*Document Examiner*

RAQUEL RUTIGLIANO
NOTARY PUBLIC, State of New York
No. 01RU6146834
Qualified in Kings County
Commission Expires 5/22/2014

---

*"Highly probable¹ - the evidence is very persuasive, yet some critical feature or quality is missing so that a definitive identification is not in order; however, the examiner is virtually certain that the questioned and known writings were not written by the same individual. American Society for Testing and Materials, Standard Terminology for Expressing Conclusions of Forensic Documents, Designation E 1658-96, Volume 14.02, pages 1055, 1056, 1997 Annual Book of ASTM.*

Very truly yours,

*Kenneth Jacobs*

OCT. 20. 2009

Sworn to before me this,
20 day of January, 2010

_____
Notary Public

KENNETH ROBERT JACOBS
Notary Public, State of New York
No. 02JA6048897
Qualified in Westchester County
Commission Expires Oct. 2, 20__

*Kenneth Jacobs*

AUG. 13. 2010

Class Action Lawsuit-BROOKLYN (List of Exhibits) (As of October 11, 2010)

| Exhibit | Page | ¶ | Document | |
|---|---|---|---|---|
| A | 8 | 23 | Notice of unpaid charges (various dates) starting with Rachel's dated 4/23/10 by Rachel Haque | |
| B | 8 | 23 | Authorization to start collection proceedings dated 3/10/10 by Rachel (Special Phone Meeting by the Board) | |
| C | 28 | 87 | Azzam's Affidavit of Service (May 4-10) to Gerardo (notarized on May 18-10) | |
| D | 29 | 89A | Santiago Iglesias' Affidavit | |
| E | 29 | 89B | Azzam's process server's license application | |
| F | 29 | 89E | Maritza's and Gerardo's affidavits | |
| G | 30 | 91 | Certification by NYS Licensing Dept. about Tara, dated 8/19/10 & Excel table about Tara | |
| H | 32 | 96 | Azzam's Affidavit of Service (May 4-10) to Nirva (notarized on May 18-10) | |
| I | 35 | 107 | Attorney Malley's Affirmation dated 8/10/10 and Sandy Stevens report on his signature as a simple forgery | |
| J | 35 | 108 | Rachel's Affidvit (dated Jan 30-10) submitted on 8/10/10 by Malley + handwriting reports by experts on notary (Jacobs) | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | x |

C

D

E

F

G

H

I

J

K

L

M

P

Q

R

S

T

U

V

W

X

Y

Z