UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
NIRVA SANCHEZ, and
GERARDO SANCHEZ                                    NOT FOR PUBLICATION
                  Plaintiffs,            **MEMORANDUM & ORDER**
                                             10-cv-3641 (CBA)

      -against-

AZZAM ABDERRAHMAN, AZZAM JOHN/JANE
DOES 1-20, TARA ANGLIN MAROLLA,
WESTCHESTER COURT SERVICE-FOX
ADVERTISING, INC., SMITH, BUSS AND JACOBS,
LLP, JOHN J. MALLEY, KENNETH R. JACOBS,
YONKERS LAW FIRM JOHN/JANE DOES 1-20,
RACHEL HAQUE, JOHN G. ANGELET, ROY
R. SPELLS, MARIA FLORES, KIMBERLY
WALENTIN, RODNEY MCLEAN, ALBERT WEISS,
HERMAN FREUND, PERCY GOLDMAN, THE
FOUNDRY CONDOMINIUM ASSOCIATION, THE
BOARD OF MANAGERS AS AGENT FOR THE
FOUNDRY CONDOMINIUM ASSOCIATION,
BOARD JOHN/JANE DOES 1-20,

                       Defendants.
--------------------------------------------------------X
**AMON, Chief United States District Judge**.

## INTRODUCTION

    Plaintiffs Nirva and Gerardo Sanchez, pro se, commenced this action on August 9, 2010

against the above-listed defendants.  The dispute arises out of a state court action in which they

are the defendants and in which the defendants here are either plaintiffs or are otherwise associ-

ated with the prosecution of the state court action.  The Sanchezes allege that they were the vic-

tims of "sewer service" in the state court action—that is, that defendants failed to serve them and

then falsely affirmed to the court that they had.  Plaintiffs assert against all defendants liability

under (1) Section 1692e of the Fair Debt Collection Practices Act ("FDCPA"); (2) Section 1962

of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) New York General Business Law § 249; and (4) various civil rights statutes.  Against defendants who are attorneys, they add a claim under New York Judiciary Law § 487.  They also seek to assert these claims on behalf of all other individuals who are the victims of the alleged "sewer service," although no other individuals or instances are identified.

Before the Court are three motions.  The first is by Rachel Haque, John G. Angelet, Roy R. Spells, Maria Flores, Kimberly Walentin, Rodney Mclean, Albert Weiss, Herman Freund, Perry Goldman (incorrectly named as "Percy Goldman" in the complaint), and the Board of Managers of the Foundry at Washington Park Condominium (named "The Foundry Condominium Association and the Board of Managers as Agent for the Foundry Condominium Association" in the complaint).  These defendants will collectively be referred to as "the Foundry Defendants."  The second motion is by Smith, Buss, and Jacobs, LLP, John J. Malley, and Kenneth R. Jacobs, collectively "the SB&J Defendants."  The third motion is by Westchester Court Service – Fox Advertising, Inc., referred to herein as "WCS."

For the reasons set forth below, the Foundry Defendants' motion is granted, the SB&J Defendants' motion is granted in part and denied in part, and WCS's motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the complaint in this action or the complaint and filings in the state court action underlying this case.  As to the former, the Court is required on a motion to dismiss to take all factual allegations in the complaint as true.  As to the latter, although it is not attached to the complaint in this case, the Court takes judicial notice of the fact of certain allegations in the state court complaint and filings without crediting those allegations as true. *See*

2

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (explaining principles of judicial notice); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009).

I.      *The State Court Action*

As noted above, this action arises out of a dispute regarding service of process in a state court action in which plaintiffs here are the defendants.  Although plaintiffs did not attach the complaint in that action to their complaint in this case, the Foundry Defendants, some of whom are plaintiffs in the state court action, have attached it to their motion to dismiss. *See* Mitola Decl. exh. F.

The Foundry Defendants are the Board of Managers of the Foundry at Washington Park Condominium ("the Board"), located in Newburgh, NY, and the individual members of the Board.  The Board commenced an action in the Supreme Court in Orange County, NY on April 27, 2010, alleging against Nirva and Gerardo Sanchez, among others, claims sounding in breach of fiduciary duty, breach of contract, fraudulent conveyance, unjust enrichment, and quantum meruit. *Id.* at 3. According to the state court complaint, the Sanchezes (along with other individuals and entities under their collective control) owned title to a majority of the units in the condominium, which in turn gave them control of the Board. *Id.* at 6-8.  They allegedly used this control (1) to avoid paying common charges for the units to which they owned title, in contravention of the condominium's bylaws, (2) to amend the bylaws to excuse payment of common charges, (3) to approve certain borrowing, and (4) to convey title to certain units to another entity under their control for no consideration. *Id.* at 3.  The Board sought damages arising directly from these allegations.

A summons issued on this complaint on April 26, 2010, which appears to have been signed by John J. Malley of Smith, Buss & Jacobs, LLP, whom the Board hired as counsel for the state

3

court action. *Id.* at 1.  According to the complaint in the instant action, on June 23, 2010, affida-vits of service were filed in the state court action averring that substitute service was made on both Nirva and Gerardo on May 3, 2010. Compl. ¶ 90.  The affidavits, which are attached to the complaint, appear to have been prepared and signed by Azzam Abderrahman, a process server, although the Sanchezes allege that the signatures on the affidavits are not Abderrahman's. Compl. ¶ 89; 98.  The affidavits were notarized by Tara M. Anglin and filed by Westchester Court Service – Fox Advertising, Inc.

Both Nirva and Gerardo filed motions to dismiss the state court complaint for lack of juris-diction.  *See* Mitola Decl. exh. G.  They alleged that they were not properly served.  They main-tained that they "learned of the existence of the complaint when two of the other defendants (Foundry Development Co., Inc. and Polonia Ventures, LLC), where [sic] served by mail by the Secretary of State, at a different address." *Id.* at 3.  According to a letter from the SB&J Defend-ants dated December 1, 2011, these motions have since been denied. *See* D.E. # 60.  Although the parties dispute the effect of this disposition on the federal action, *see* D.E. # 61, it is apparent-ly not disputed that the state court permitted plaintiffs in that action to file an amended complaint which has been properly served on Nirva and Gerardo. *Id.* at 3-5.

## II.     *The Federal Action*

Nirva and Gerardo filed this action on August 9, 2010, and filed an amended complaint on November 12, 2010.  They appear to sue any party that was in any way involved with service of process in the state court action, whether by filing the suit, hiring the process server, filling out an affidavit of service, or notarizing and filing that affidavit.

Plaintiffs allege, apparently with respect to all defendants, that "[d]efendants routinely use the Courts to collect debts." Compl. ¶ 74. They claim that the SB&J Defendants often hire the

process servers—WCS and Azzam Abderrahman—as well as the notary public—Tara Anglin—that they hired in this case. *Id.* ¶ 75. They further claim that WCS and Abderrahman often do not actually serve process, and instead they simply file false affidavits of service with the court in order to obtain default judgments. *Id.* ¶¶ 75-77.

Plaintiffs claim that they were victims of this scheme.  They allege that, for several reasons, the affidavit of service filed in the state court action was false. *Id.* ¶ 89.  They further claim that the Foundry Defendants and the SB&J Defendants caused the affidavits to be filed. *Id.* ¶ 90. They maintain that, because these defendants regularly hire these process servers, they "knew or reasonably should have known" that the affidavits were false. *Id.* ¶ 78.  Lastly, they allege that several filings submitted by the SB&J Defendants were not actually signed by the attorneys who purportedly signed them but were instead signed by others at the firm. *Id.* ¶¶ 104-10.  They allege that this is part of the fraudulent scheme.

As a result of defendants' alleged conduct in this case, Gerardo and Nirva claim that they may be subject to improper service again if the state court action is dismissed without prejudice. They also claim that they have suffered economic harm related to defending the state court action, that Gerardo "could not perform any work while fighting the improper service," and that both are depressed and anxious as a result of the improper service. *Id.* ¶¶ 92-113.  Finally, they seek statutory damages, punitive damages, attorney's fees, and costs. *Id.* ¶ 135.

## DISCUSSION

### I.      *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal on the ground that the complaint "fail[ed] to state a claim upon which relief can be granted."  In reviewing a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and

must draw all reasonable inferences in favor of the plaintiff. *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000).  The Supreme Court has also made clear that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A complaint need not include "detailed factual allegations," but mere "labels and conclusions" will not suffice. *Twombly*, 550 U.S. at 555.  The "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1949.

## II.    *The Foundry Defendants' Motions to Abstain, Stay, or Dismiss*

The Foundry Defendants move the Court to abstain pursuant to the *Colorado River* abstention doctrine, or in the alternative to stay the action; to dismiss for failure to state a claim; or to dismiss for lack of venue.  The Court is not convinced that resolution of the state court action will necessarily dispose of all claims against all parties in the federal action.  This is because of the possibility, which Sanchez claims actually materialized, that the state court could decline to consider whether service in that action was proper, instead allowing plaintiffs to amend their complaint and properly serve Sanchez.  In light of this possibility, abstention is not appropriate. *See Kingsway Fin. Servs, Inc. v. Pricewaterhousecoopers, LLP.*, 420 F. Supp. 2d 228, 232

6

(S.D.N.Y. 2005) (explaining that abstention is not warranted absent "'substantial likelihood' that state court litigation will 'dispose of all the claims presented in the federal case'") (quoting *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005)).  For similar reasons, the Court declines to stay.  And venue is proper in the Eastern District of New York because, at least so far as the Court has been made aware, all defendants reside in the state of New York and at least one defendant, Abderrahman, resides in this District.[1]  *See* 18 U.S.C. § 1391(b)(1).  The Court finds, however, that plaintiffs have failed to state a claim against the Foundry Defendants, so the motion to dismiss is granted.

### A.  FDCPA Claim

Plaintiffs' FDCPA claim arises under 15 U.S.C. § 1692e, which creates a cause of action for the "false, deceptive, or misleading" conduct of "debt collectors."  The Foundry Defendants argue, among other things, that they are not "debt collectors" under the FDCPA.  The Court agrees and dismisses plaintiffs' FDCPA claim.

Section 1692e states, in relevant part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The term "debt collector" is defined in § 1692a(6) as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Section 1692a(6) goes on to exclude from this definition several categories of individuals, for example "any officer or employee of a creditor while, in the name of the creditor, collecting such debts for such creditor," 15 U.S.C. § 1692a(6)(A),

---

[1] As support for their venue argument, the Foundry Defendants rely upon the Supreme Court's quotation of the venue statute, 28 U.S.C. § 1391(b), in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 23 (1987): "venue is proper 'only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.'"  The venue statute has been amended since the Supreme Court's 1987 quotation.

and "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement," 15 U.S.C. § 1692a(6)(F)(i).

To avoid dismissal, plaintiffs place principal reliance for the position that defendants are debt collectors on a Southern District case, *Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010). The plaintiffs in *Sykes* brought a class action under the FDCPA against a debt-buying business, the business's regular law firm, and the law firm's regular process server. The complaint alleged that the debt-buying business was "principally in the business of buying defaulted debts and seeking to collect on them, as they have filed more than 100,000 debt collection actions in state courts." *Id.* 757 F. Supp. 2d at 423. The court found this allegation sufficient to survive a motion to dismiss.

As several defendants have pointed out, the complaint in this case borrows not just language, but factual allegations from the complaint in *Sykes*. Indeed, in many paragraphs plaintiffs have simply changed the names of the defendants. But the facts underlying this case are strikingly different. The complaints in both this action and the state court action, as well as exhibits annexed to both, make clear that the Foundry Defendants are a condominium board and its members, not a debt-buying business. And there is no suggestion that the common charges the Foundry Defendants are seeking to collect in the state court action are or ever were "owed or due another." Courts have routinely dismissed FDCPA claims in such circumstances. *Pu v. Charles Greenthal Mgmt.*, 2010 WL 774335 (S.D.N.Y. 2010); *Barry v. Bd. of Mgrs. of Elmwood Park Condominium II*, 853 N.Y.S.2d 827 (N.Y. Civ. 2007); *Doran v. Aus*, 308 F. App'x 49 (9th Cir. 2009).

Plaintiffs have merely labeled the Foundry Defendants "debt collectors" and quoted the statutory definition. Compl. ¶¶ 21-32.  They provide no factual allegations indicating that the Foundry Defendants are involved with a "business the principal purpose of which is [debt collection]," or that they have attempted here, or at any other time, to collect debts "owed or due another." Their complaint with respect to the Foundry Defendants is nothing more than the "labels and conclusions" and "formulaic recitation of the elements of a cause of action" that cannot survive a motion to dismiss. *Twombly*, 550 U.S. at 555.  And even if the pleadings could satisfy the general definition of "debt collector," it is clear that the Board—pursuant to the "fiduciary obligation" provision quoted above, 15 U.S.C. § 1692a(6)(F)(i)—and the individual members—as "officer[s] or employee[s] of a creditor," 15 U.S.C. § 1692a(6)(A)—are excluded from that definition. *See generally Barry*, 853 N.Y.S.2d 827.  The FDCPA claim against the Foundry Defendants is therefore dismissed.

### B.  Civil RICO and RICO Conspiracy Claims

To state a civil RICO claim, plaintiff must plead "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Zavalidroga v. Cote*, 395 F. App'x 737, 740-41 (2d Cir. 2010) (quoting *Moss v. Morgan Stanley, Inc.*, 718 F.2d 5, 17 (2d Cir. 1983)).  Fed. R. Civ. P. 9(b) applies to civil complaints alleging civil RICO claims.  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990).

As the Foundry Defendants argue, one of the many defects in plaintiffs' civil RICO pleading is that they have failed to allege a "pattern" of racketeering activity.  Predicate acts constitute a "pattern" only if they "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.  The Second Circuit has held that "a plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *GICC Capital Corp. v. Tech. Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

Although the complaint does elliptically suggest that the Foundry Defendants have been involved with a debt collection and sewer service scheme for several years, these allegations fall far short of Rule 9(b)'s elevated pleading standard, which requires particularized allegations.  As such, the only allegations pled with the requisite particularity relate to alleged sewer service in the state court action.  Even if plaintiffs satisfied the other elements of a civil RICO claim, which they most certainly do not, these allegations amount at most to a handful of fraudulent filings, over a brief period, in state court.  There is no suggestion that these alleged acts "amount to or pose a threat of continued criminal activity," so plaintiffs have not alleged an open-ended pattern. *First Capital Asseet Mgmt, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).  Neither have they alleged a closed-ended pattern.  The Second Circuit has "never found a closed-ended pattern where the predicate acts spanned fewer than two years." *Id.*  The handful of acts that are adequately alleged span at most a few months.

In sum, plaintiffs have not alleged, with requisite particularity, a "pattern" of racketeering activity, so the Civil RICO claim fails. Because these allegations are insufficient to state a substantive RICO violation, they are insufficient to state a conspiracy to commit such a violation. *See id.* at 182. And because there are no other allegations that the Foundry Defendants "agreed to perform additional predicate acts that, if committed, would have displayed continuity sufficient to establish a pattern of racketeering activity," the RICO conspiracy claim fails. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 245 (2d Cir. 1999). Accordingly, the Foundry Defendants' motion to dismiss the Civil RICO and RICO conspiracy claims is granted and the claims are dismissed as to all defendants.

*C. Civil Rights Claims*

Plaintiffs attempt to state claims for civil rights violations under 18 U.S.C. § 242, 18 U.S.C. § 2, and 42 U.S.C. § 1983. The first two, 18 U.S.C. § 242 and 18 U.S.C. § 2, are criminal statutes. As the Foundry Defendants argue, neither provision affords a civil plaintiff a private cause of action. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190-91 (1994); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003). Accordingly, the Court grants the motion with respect to these two claims.

As to the § 1983 claim, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Broth. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991). The Foundry defendants argue that plaintiffs have not done so.

A private actor is liable under § 1983 only if its conduct is "fairly attributable" to the state. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "The actions of a nominally private entity are attributable to the state (1) when the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state . . . ; (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate," or the entity's functions are 'entwined' with state policies . . . ; or (3) when the entity 'has been delegated a public function by the [s]tate." *Sybalki v. Indep. Group Home Living Program, Inc.*, 545 F.3d 255 (2d Cir. 2008).

Plaintiffs rely on the Second Circuit case *United States v. Wiseman*, 445 F.2d 792 (2d Cir. 1971), in arguing that the conduct alleged constitutes state action. In *Wiseman*, the court addressed whether the defendants, private individuals employed by a process server, could be prosecuted under § 1983's criminal counterpart, 18 U.S.C. § 242, for failing to serve process and then filing false affidavits claiming they had. The Court held that the defendants were state actors. It held that "[u]nlike most functions involved in the conduct of a lawsuit by private parties, the service of summons is essentially and traditionally a public function." *Id.* at 796. The court adopted a statement from a New York state court that "the service of process is an act of public power." *Id.* (quoting *In re Bonesteel's Will*, 228 N.Y.S. 2d 31, 304 (3d Dep't 1962)).

As a threshold matter, the Foundry Defendants—as well as the SB&J Defendants and at least one court, *see Iannucci v. Alstate Process Serv., Inc.*, 2006 WL 2792228, at *8 (W.D.N.C. 2006)—have questioned the continuing vitality of *Wiseman*. They suggest that *Wiseman* is in tension with certain language in the Supreme Court's opinion in *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 940 (1982). But they do not actually argue that *Wiseman* is not good law, and no court has so found. Nor is it at all obvious that *Lugar*, or any other Supreme Court prece-

dent addressing the "public function" test, compels this conclusion.  Accordingly, *Wiseman* controls this case.

The problem with plaintiffs' § 1983 claim against the Foundry Defendants, however, is that the allegations in the complaint do not connect the Foundry Defendants to the alleged "sewer service," the only conduct at issue in this case, and hence the only possible state action.  It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§] 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  And the Supreme Court held in *Iqbal* that the allegation of a principal's mere "knowledge and acquiescence" in the "misdeeds of [its] agents" is insufficient to survive a motion to dismiss under Rule 12(b)(6). 129 S. Ct. at 1949.

Plaintiffs claim that "Supervising Defendants"—which includes the Foundry Defendants and the SB&J Defendants—frequently file debt collection actions and that they "all know or reasonably should have known that most of the affidavits of service are false and invalid." Compl. ¶ 78.  They also claim that "the Supervising Defendants caused the fraudulent affidavit of service described above to be prepared and filed with the Court." Compl. ¶ 90.

But simply lumping the Foundry Defendants in with their counsel in the category of "Supervising Defendants" and baldly alleging, in effect, a conspiracy is insufficient. *Cf. Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (dismissing "conclusory allegations of conspiracy"); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed . . . .").  There are no specific facts supporting the generalized allegation that the Foundry Defendants, a condominium board, frequently file debt collection actions, that they possess the savvy to conspire with

13

their counsel to manipulate the laws governing service of process, or that they did so here. Common sense and experience make such a conclusion implausible.  Plaintiffs claim therefore fails.

Plaintiffs' claim also fails for another reason: they have not pled a constitutional violation. Although service of process fulfills an important due process function, improper service is not itself a free-standing due process violation.  "To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct per-formed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  Accordingly, to state a cause of action under § 1983 arising from improper service, a plaintiff must at least establish that the improper service resulted in some deprivation, for example, by resulting in a default judgment.  Because plaintiffs here have established no such deprivation, their claim fails. *See Wilkins v. Rogers*, 581 F.2d 399, 405 (4th Cir. 1978) (noting that despite improper service, plain-tiff was not deprived of constitutional rights because she had notice and opportunity to be heard); *Iannucci*, 2006 WL 2792228 at *8-9; *see Slaughter v. Legal Process & Courier Service*, 162 Cal. App. 3d 1236, 1245-46 & n.6 (Call Ct. App. 1984); *see also Baker v. Latham Sparrowbush As-socs.*, 72 F.3d 246, 254 (2d Cir. 1995) ("If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not of-fended."); *McCulloch v. Washoe Cty*, 551 F. Supp. 1022 (D. Nev. 1982), *aff'd* 720 F.2d 1020 (9th Cir. 1983) (dismissing constitutional claim for improper service on different ground).

Plaintiffs have not pled allegations that support the inference that they did not have actual notice apprising them of the pendency of the action and affording them of the opportunity to re-spond.  These are critical omissions.  And although the Court cannot consider statements in court

filings that are outside of the complaint for their truth, the omissions in this complaint are all the more glaring in light of the Sanchezes' statements in state court.  The Sanchezes acknowledged in their motions to dismiss the state court action that they became aware of the pendency of that action within a month of its commencement.[2] *See* Mitola Aff. exh. G at 3.  Moreover, the sheer volume of the Sanchezes' filings in state court suggests that they have contested that action vigorously.

Because plaintiffs have not adequately pled that any conduct by the Foundry Defendants was state action, or that they were deprived of a constitutional right, the Foundry Defendants' motion to dismiss the § 1983 claim is granted.  Moreover, because plaintiffs have failed to state a claim for a constitutional violation, the civil rights claims are dismissed as to all defendants.

### D.  The NY GBL § 349 Claim

Plaintiffs' final substantive claim against the Foundry Defendants arises under New York General Business Law § 349.  Section 349 affords private redress for "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . ."  Section 349 is, "at its core, a consumer protection device." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).  As such, in order to state a claim, a plaintiff must allege "conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).  The Foundry Defendants argue that plaintiffs have not done so.

---

[2] In fact, plaintiffs claimed in their state court motion to dismiss that they found out about the action when Foundry Development Co., Inc. and Polonia Ventures, LLC, also defendants in the state court action, were served. Mitola Decl. exh. G at 3.  The complaint in the state court action alleges that Gerardo is a principal of both of these entities. Mitola Decl. exh. F at 5.  And presumably both entities were properly served by the Secretary of State only because the Secretary of State was properly served under New York Business Corporation Law § 306 by plaintiffs in the state court action.  As an aside, it seems unlikely that defendants here were participants in an elaborate sewer service scheme, but that they also properly served an entity whose principal they know to be the very individual against whom they sought a fraudulent default judgment.

As a general matter, "[a] plaintiff establishes consumer-oriented conduct by showing that 'the acts or practices have a broader impact on consumers at large' in that they are 'directed to consumers' or that they 'potentially affect similarly situated consumers.'" *Allstate Ins. Co. v. Lyons*, 2012 WL 517600, at *11 (E.D.N.Y. 2012) (quoting *Oswego*, 85 N.Y.2d at 25, 27). Courts have held that private contracts, discrete landlord-tenant disputes, and transactions between sophisticated business parties are generally not consumer-oriented. Other courts, however, have taken a broader view, recognizing that a deceptive practice used in a seemingly discrete, private transaction could impact "similarly situated individuals," *see Erdman v. HSBC Auto Finance*, 2011 WL 3420849, at *4 (W.D.N.Y. 2011) (allegedly deceptive practice with respect to one borrower could affect similarly situated consumers), or that a fraudulent practice, even one wholly removed from a consumer transaction, can be consumer-oriented if it has some indirect impact on the marketplace for some good or service, *see, e.g.*, *Allstate Inc. v. Lyons*, 2012 WL 517600, at *11 (E.D.N.Y. 2012) (holding that non-consumer defendant's alleged scheme to defraud insurance company of millions of dollars was consumer-oriented conduct because it was bound to raise premiums for consumers of insurance).

Plaintiffs again rely upon *Sykes*, in which the Court denied a motion to dismiss a § 349 claim. In *Sykes*, eight plaintiffs alleged eight specific instances of sewer service in respective debt collection actions in which they were named as defendants. *Id.* at 418. Each of the debt collection actions was brought by a debt-buying business, that is, a business that purchases "portfolios of defaulted debts for pennies on the dollar," often without documentation of indebtedness, and then attempts to recover the full value of the debt. *Id.* at 419. Plaintiffs also connected each of these instances to a specific law firm and process server. They pointed out as background that "the New York City Department of Consumer Affairs held a public hearing on unethical debt-

collector fee arrangements with process servers." *Sykes*, 757 F. Supp. 2d at 420.  All told, the plaintiffs in *Sykes* alleged the details of a sophisticated scheme to buy consumer debt and secure consumers' defaults.

The facts of this case are not like *Sykes*.  Plaintiffs here do allege that the Foundry Defendants filed an action against them to recover a debt, but they do not explain the nature of the debt sought in that action.  As the state court complaint reveals, that action does not concern consumer debt purchased from another party by a debt-buying business.  Rather, it seeks a debt owed directly to the condominium.  Moreover, the state court complaint reveals that the underlying dispute in state court has nothing to do with a consumer transaction.  Rather, it concerns the payment of common charges to the condominium units, as well as damages for breaches of the Sanchezes' duties as fiduciaries to the condominium.  Accordingly, even assuming the truth of Plaintiffs' assertions that the Foundry Defendants engaged in sewer service in that action, that conduct was not "consumer-oriented."  Nor does it become so simply because plaintiffs have alleged—in the most bald and general fashion—that the Foundry Defendants at other unidentified times have attempted to collect unidentified debts from unidentified individuals.

Having reviewed the well-pleaded facts along with statements in state court of which the Court takes judicial notice, and considering them in light of common sense and experience, the Court finds that plaintiffs have not alleged consumer-oriented conduct.  The Foundry Defendants' motion to dismiss the § 349 claim is therefore granted.

III.    *The SB&J Defendants' Motion to Dismiss*

The SB&J Defendants move to dismiss all claims against them pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  This motion is granted in part and denied in part.

### A.   *The Resolution of the State Court Motions*

As explained above, plaintiffs moved in state court to dismiss that action for lack of jurisdiction on the grounds of improper service.  On December 1, 2011, the SB&J Defendants filed a letter informing the Court that these motions have since been denied. *See* D.E. # 60.  They attach the short form orders from the state court and ask that the Court consider them.  They do not, however, discuss the issues underlying the motions or cite any case law concerning their effect in this action.  Nor do they suggest what effect these orders should have, other than citing to a previous statement in their memorandum in support that "[i]f the state court upholds service of process upon them in the underlying action, this entire case crumbles like a house of cards." *Id.* at 1-2.  Plaintiffs, for their part, contest that the state court orders bar their claims in the federal action.

Because the SB&J Defendants have failed to brief or even identify the legal doctrine they rely upon, which is presumably collateral estoppel, the Court is in no position to consider it.

### B.   *The FDCPA Claim*

As explained above, a § 1692e claim can be maintained against a "debt collector [who uses] any false, deceptive, or misleading representation or means in connection with the collection of any debt." The SB&J Defendants argue that plaintiffs have not stated a claim under 15 U.S.C. § 1692e because they have merely pled the elements of the statute, without providing factual support.  They argue that "apart from the specific allegations relating to these two plaintiffs and one underlying state court action, there are no facts alleged in support of their pro forma allegations." SB&J Mem. in Supp. at 4.

The SB&J Defendants attack the pleadings with respect to their status as "debt collectors" under the FDCPA.  They concede that a law firm could be a "debt collector" under the FDCPA,

but argue that plaintiffs' unsupported claim that the SB&J Defendants "regularly engaged in the collection of debts" is insufficient for purposes of establishing SB&J's status. SB&J Mem. in Supp. at 5.  The only cases cited in support of the SB&J Defendants' motion do not address the definition of "debt collector."  The plaintiffs again simply rely on *Sykes* to argue that they have adequately pled debt collector status.

Plaintiffs' allegations are sufficient, if only barely.  Plaintiff has included detailed allegations of SB&J's conduct with respect to one particular action to collect a debt, and has alleged that SB&J is a law firm, that it regularly engages in such actions, and that it hires the same process server in each of these actions. Unlike the same allegation with respect to the Foundry Defendants, identified in the complaint as a condominium board, the allegation that SB&J, a law firm, is regularly engaged the collection of debts is simply not implausible.  Indeed, common sense suggests just the opposite, and the SB&J Defendants do not argue otherwise.

The SB&J Defendants also seem to argue that plaintiffs have not adequately pled a "false, deceptive, or misleading representation or means."   They cite three cases in support of their motion—*Clemente v. IC Systems, Inc.*, 2010 WL 3855522 (E.D. Cal. 2010); *Chartey v. Farnsworth*, 2010 WL 199691 (S.D.N.Y. 2010); and *Sembler v. Attention Funding Trust*, 2009 WL 3055347 (E.D.N.Y. 2009)—in which the courts dismissed FDCPA claims because the complaint failed to identify specifically the dates, times, and nature of the conduct alleged.  But here the SB&J Defendants acknowledge that the complaint contains "specific allegations relating to these two plaintiffs and one underlying state court action." SB&J Mem. in Supp. at 4.  Again, the only alleged defect advanced by the SB&J Defendants is that the allegation that they "regularly engaged in the collection of debts" is too conclusory to survive a motion to dismiss.

19

Neither of the two possible arguments made by the SB&J Defendants, at least in the form they have made them, entitle them to dismissal.  The Court cannot conclude that plaintiffs' FDCPA claim is wholly implausible, or that the complaint fails to provide the SB&J Defendants with fair notice of the allegations underlying the claim.  Dismissal under Rule 12(b)(6) is therefore inappropriate at this time.

### C.  Civil RICO and RICO Conspiracy Claims

The SB&J Defendants move to dismiss the civil RICO and RICO conspiracy claims on the ground that plaintiffs have not pled a "pattern" of racketeering activity.  For the same reasons that dismissal was appropriate with respect to the Foundry Defendants, *see supra* Section II.B., dismissal is appropriate here.  Plaintiffs have not alleged a "pattern" of racketeering activity with the requisite specificity, nor have they adequately alleged a conspiracy to commit sufficient predicate acts to establish such a pattern.  SB&J's motion to dismiss the civil RICO and RICO conspiracy claims is granted.

### D.  The Civil Rights Claims

Plaintiffs also assert claims for civil rights violation under 18 U.S.C. § 2, 18 U.S.C. § 242, and 42 U.S.C. § 1983 against the SB&J Defendants. Because the Court has already found that plaintiffs have not stated a constitutional violation, *supra* Section II.C, the SB&J Defendants' motion to dismiss is granted.

### E.  The NY GBL § 349 Claim

For substantially the same reasons stated *supra* Section II.D, plaintiffs have not adequately alleged consumer-oriented conduct. The SB&J Defendants' motion to dismiss the § 349 claim is granted.

*F.   The NY JL § 487 Claim*

The final substantive claim against the SB&J Defendants is for violation of New York Judiciary Law § 487(1).  Section 487 provides a civil remedy where an attorney has engaged in "any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."  As the SB&J Defendants point out, it is well-settled that "[i]f an allegedly injured party is aware that a lawyer is violating § 487 at the time the violation occurs, the victim's exclusive remedy is to bring an action in the course of that same proceeding." *Seldon v. Bernstein*, 2010 WL 3632482, at *2 (S.D.N.Y. 2010); *Yalkowsky v. Century Apartments Assocs.*, 626 N.Y.S.2d 181, 181 (1st Dep't 1995).  Plaintiffs' allegations, coupled with the dates of their motions to dismiss in state court, make clear that they were aware of the alleged violations at the time they occurred.  Moreover, the state court action is still pending.  Accordingly, plaintiffs remedy is to bring their § 487 claim in that proceeding.  The motion to dismiss that claim is granted.

*IV.   WCS's Motion to Dismiss*

WCS seeks dismissal of all claims, arguing that the action is somehow unsuitable for federal court and that the complaint fails to state a claim under the FDCPA. Although, plaintiffs appear to have received the motion, they have not opposed it.  Nonetheless, the motion is denied.

As noted above, WCS's first argument is that "the allegations in the federal case are simply not the type of subject matter that this District Court would hear." WCS Mem. in Supp. at 3.  It argues that any remedy to which plaintiffs may be entitled is available in the state court action through a motion to dismiss, and that their claims are therefore not appropriate for this Court.  It is not clear to the Court whether WCS means to invoke abstention doctrine, request a stay, challenge the Court's jurisdiction, or otherwise contest the Court's competence to entertain plaintiffs' claims.  In any event, WCS's argument is plainly insufficient to merit dismissal.

WCS's other argument targets only the FDCPA claim.  WCS argues that it is not a "debt collector" under the FDCPA because § 1692e(D) excludes from the definition of "debt collector" "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt."

But plaintiffs do not seek to hold WCS liable for any conduct "while serving or attempting to serve legal process."  To the contrary, they claim that WCS, along with Abderrahman and Marolla, did not serve or attempt to serve process at all, but instead merely filed a false affidavit claiming they had.  Several courts have held that such conduct is not exempted by the process-server exclusion.  *See, e.g.*, *Freeman v. ABC Legal Servs Inc.*, 2011 WL 6090699, at *7 (N.D. Cal. 2011) ("Plaintiff has sufficiently alleged that Defendants engaged in 'sewer service' so as to forfeit the process server exemption."); *Sykes*, 757 F. Supp. 2d at 423 ("Because the FDCPA protects process servers only 'while' they serve process, the Samserv defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption."); *Flamm v. Saner & Assocs., P.C.*, 2002 WL 31618443, at *5 (E.D. Pa. 2002) ("[A] person who goes beyond being merely a messenger in serving legal process and engages in prohibited abusive or harassing activities to force an individual to repay a debt is no longer exempt under the legal process server exception.").  The Court finds these holdings persuasive, and WCS has not addressed or distinguished them.

Although WCS has not directed specific arguments against the Civil RICO/RICO Conspiracy claims, the civil rights claims, or the NY GBL § 349 claim, the Court has already found that plaintiffs fail to state such claims against any party.  WCS's motion to dismiss these claims is therefore granted.

**CONCLUSION**

For the reasons stated,

The Foundry Defendants' motion to dismiss the FDCPA claim, the Civil RICO/RICO conspiracy claims, the civil rights claims, the NY GBL § 349 claim, and any claims for declaratory judgment or injunctive relief is GRANTED;

The SB&J Defendants' motion is DENIED with respect to the FDCPA claim and GRANTED with respect to the Civil RICO/RICO conspiracy claims, the civil rights claims, the NY GBL § 349 claim, and the NY JL § 487.

WCS's motion to dismiss is DENIED with respect to the FDCPA claim and GRANTED with respect to the Civil RICO/RICO conspiracy claims, the civil rights claims, and the NY GBL § 349 claim.

Further, the Civil RICO/RICO conspiracy claims, the civil rights claims, and the NY GBL § 349 claim against all remaining parties are dismissed.

SO ORDERED.

Dated:  March 30, 2012
           Brooklyn, N.Y.

                                        _____/s/_____
                                        Carol Bagley Amon
                                        Chief United States District Judge